## Appeal of THE SERVICE RECORDER CO.

Docket No. 2201.   Submitted May 11, 1925.   Decided June 19, 1925.

1. A license for the use of a patent during its life is subject to exhaustion in the same manner as the patent.

2. Where such license has been acquired for stock, exhaustion should be computed upon its actual cash value, rather than upon the par value of the stock issued therefor.

*Stephen G. Rusk, C. P. A.*, for the taxpayer.
*M. N. Fisher, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, and SMITH.

This is an appeal from a determination of deficiencies in income and profits taxes for the years 1919 and 1920 in the amounts of $169.52 and $1,927.31, respectively—total $2,096.83.

### FINDINGS OF FACT.

1. The taxpayer is an Ohio corporation, incorporated in 1911.

2. On May 11, 1909, letters patent No. 921157 were issued to Edwin S. Phelps, of the City of New York, for a vibration recorder for automobiles and other vehicles. The device covered by this patent is an instrument which, when attached to vehicles, will record the time (by hours and fractions thereof) during which the vehicle is in motion.

3. On May 11, 1910, the patentee entered into an agreement with Fritz Baumgaertner for the manufacture of the patented device. Under this agreement Baumgaertner paid to Phelps prior to March 13, 1911, $1,250 minimum royalty.

4. On March 13, 1911, Edwin S. Phelps and Fritz Baumgaertner entered into a new agreement which superseded the agreement of May 11, 1910. The consideration for this agreement was $25. This agreement stipulated that—

1. The said Edwin S. Phelps gives and grants unto the said Fritz Baumgaertner, his heirs, executors, administrators and assigns, the sole and exclusive right and privilege to manufacture, to use and to sell the device, shown, described and claimed in said above-mentioned patent, for the full term for which said Letters Patent are granted, including any reissues or extensions thereof subject to the conditions herein specified.

Under the agreement Baumgaertner had an option to continue the agreement in full force and effect from year to year, provided the amounts due and payable to the inventor were paid as provided in the agreement; Baumgaertner could discontinue the agreement and discharge himself of all future obligations thereunder by giving notice to the inventor, Edwin S. Phelps, in writing, 60 days before the termination of one year dating from August 1. The agreement further stipulated that Baumgaertner would pay certain royalties to the inventor, as follows:

•For a one-day recorder $1.50 for each such instrument sold and paid for;
For a more than one-day recorder $4.50 for each such instrument sold and paid for.

The agreement also provided that Baumgaertner would pay certain minimum royalties to the inventor, as follows:

| Year ended August 1st— | Amount |
|---|---|
| 1912 | $1,250 |
| 1913 | 3,500 |
| 1914 | 3,500 |
| 1915 and thereafter | 5,000 |

The minimum royalty was conditioned upon the investment, prior to August 1, 1911, in the business by Baumgaertner of at least $15,000. It was mutually agreed that a waiver of any breach of any condition of the agreement should not operate as a waiver of any subsequent breach thereof.

5. In April, 1911, Baumgaertner by written instrument duly assigned and transferred to the Baumgaertner-Patrick Co. all his right, title, and interest in, to, and under the agreement of March 13, 1911.

Under date of May 10, 1911, the Baumgaertner-Patrick Co. entered into an agreement with the taxpayer which recites in part as follows:

1. The first party hereby sells, assigns and transfers to the second party, its successors and assigns, all its right, title and interest in, to and under the said contract between Edwin S. Phelps and Fritz Baumgaertner, and all other property and assignable property rights now owned by the first party or which it may be entitled to enjoy, including all its stock in trade and all articles manufactured by or for it under the said contract, and all patterns, drawings, dies, tools and other property now owned by the first party and used in connection with the business heretofore carried on by it.

The consideration for the assignment and transfer was: (a) 202 shares of the capital stock of the taxpayer, which stock "shall be fully paid for by the property and rights so transferred"; (b) the taxpayer was to assume, and did assume and agreed to pay, to the extent of $1,000, the obligations incurred by the Baumgaertner-Patrick Co. in connection with a certain contract it had entered into with Henry H. Thomas for marketing and leasing the said patented device, which contract had been assigned by Thomas to one R. S. Douglass and by the latter assigned to The Man in the Box Sales Co.; and, in addition, the taxpayer assumed and agreed to pay all other obligations of the Baumgaertner-Patrick Co. not exceeding, however, $3,000 in amount.

6. Subsequent to May 10, 1911, the taxpayer issued one additional share of capital stock in payment of money spent or service performed in connection with the patent license. At January 1, 1919, the patent license stood 'upon the taxpayer's books of account at $20,300, which amount represented the par value of capital stock issued in respect of the patent license and other assets acquired from the Baumgaertner-Patrick Co.

7. Subsequent to May 10, 1911, the taxpayer sold for cash at par to a representative body of investors 397 shares of capital stock. These shares of capital stock were sold as capital was needed for the development of the business. The last sales were made in June, 1913.

8. In the early years of the taxpayer's existence it was found that the device embodying a dial for the more than one-day recorder was not commercially valuable but that the one-day recorder was of commercial value. The taxpayer operated at a loss during the years 1911, 1912, and 1913, and found itself 'unable to pay the minimum royalty provided for by the agreement with the inventor above referred to, dated March 13, 1911. A revision of the original agreement was made under date of December 12, 1914, by which the taxpayer relinquished its right to the exclusive manufacture of the patented device, at least in so far as it related to the manufacture of a more than one-day recorder, and by which it was released from the payment of a minimum royalty.

9. The first profitable year of the taxpayer was 1919. For that year the taxpayer had a net income of $8,394.41 and for the year

1920 the net income reported was $15,611, which was increased by the Commissioner to $18,859 by reason of the disallowance of $3,248 claimed depreciation on the patent license. The claimed invested capital for each year was reduced by $20,300, the amount representing patent license valuation and value of intangibles carried on the taxpayer's books of account.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 10 days' notice, in accordance with Rule 50.

### OPINION.

SMITH: In its appeal the taxpayer alleges error on the part of the Commissioner in disallowing any amount for exhaustion of patents as a deduction from gross income in its tax return for 1919, and also in reducing its claimed invested capital for each of the years 1919 and 1920 by the total amount claimed as the cost to it of the patent license and intangibles.

With respect to the first allegation of error, the Board is of the opinion that the taxpayer is entitled to claim a deduction from the gross income reported in its returns for the year 1919 of an amount representing exhaustion of its patent license, provided the patent license had a value at the time it was acquired by the taxpayer in 1911. *Appeal of Union Metal Manufacturing Co.*, 1 B. T. A. 395. The taxpayer alleges that it had a value and that its value at March 1, 1913, was at least $20,300, the amount of the par value of the shares of stock issued in payment therefor. The evidence is to the effect that the other assets acquired for the $20,300 par value of stock issued had only a nominal value. As proof of the claimed value of the patent license the taxpayer points to the sale by it of $39,700 par value of stock for cash at par.

We do not think that the fact that $39,700 par value of capital stock was sold for $39,700 cash proves the cash value of the patent license. Presumably the inventor, Edwin S. Phelps, entered into as advantageous a contract for the manufacture of the patented device as it was possible for him to secure. There is no evidence that Baumgaertner paid anything to the inventor in cash under the agreement dated May 11, 1910, and, so far as appears, the only cash that was paid by Baumgaertner for the patent license was $25, which is recited by the agreement of March 13, 1911, and $1,250 minimum royalty paid under the first contract. At a later date $100 par value of stock was issued for expenses paid or for services performed in connection with the patent license. There is no proof

of any enhancement in value of the contract entered into on March 13, 1911, between that date and May 10, 1911, the date upon which the contract was assigned to the taxpayer. We are of the opinion, therefore, that the only cash value of the patent license which has been proved is $1,375. Only a reasonable amount may be deducted from gross income for depreciation or exhaustion of property. Such depreciation or exhaustion must be based on the cash value of the property where it is acquired by the issuance of shares of capital stock. The only cash value which the patent license had in 1911 was $1,375, and we do not think that it had a greater value on March 1, 1913. We therefore are of the opinion that only one-fifteenth of $1,375 is a legal deduction from gross income in respect of depreciation upon the patent license for each of the years 1919 and 1920.

With respect to the second question in issue, we are of the opinion that the depreciated cash value of the patent license at January 1, 1919, and January 1, 1920, may properly be included in invested capital; in other words, seven-fifteenths of $1,375 for 1919 and six-fifteenths of $1,375 for 1920.