*99 OPINION.
Smith:
In its appeal the taxpayer alleges error on the part of the Commissioner in disallowing any amount for exhaustion of patents as a deduction from gross income in its tax return for 1919, and also in reducing its claimed invested capital for each of the years 1919 and 1920 by the total amount claimed as the cost to it of the patent license and intangibles.
With respect to the first allegation of error, the Board is of the opinion that the taxpayer is entitled to claim a deduction from the gross income reported in its returns for the year 1919 of an amount representing exhaustion of its patent license, provided the patent license had a value at the time it was acquired by the taxpayer in 1911. Appeal of Union Metal Manufacturing Co., 1 B. T. A. 395. The taxpayer alleges that it had a value and that its value at March 1, 1913, was at least $20,300, the amount of the par value of the shares of stock issued in payment therefor. The evidence is to the effect that the other assets acquired for the $20,300 par value of stock issued had only a nominal value. As proof of the claimed value of the patent license the taxpayer points to the sale by it of $39,700 par value of stock for cash at par.
We do not think that the fact that $39,700 par value of capital stock was sold for $39,700 cash proves the cash value of the patent license. Presumably the inventor, Edwin S. Phelps, entered into as advantageous a contract for the manufacture of the patented device as it was possible for him to secure. There is no evidence that Baumgaertner paid anything to the inventor in cash under the agreement dated May 11, 1910, and, so far as appears, the only cash that was paid by Baumgaertner for the patent license was $25, which is recited by the agreement of March 13, 1911, and $1,250 minimum royalty paid under the first contract. At a later date $100 par value of stock was issued for expenses paid or for services performed in connection with the patent license. There is no proof *100 of any enhancement in value of the contract entered into on March 13, 1911, between that date and May 10, 1911, the date upon which the contract was assigned to the taxpayer. We are of the opinion, therefore, that the only cash value of the jjatent license which has been proved is $1,375. Only a reasonable amount may be deducted from gross income for depreciation or exhaustion of property. Such depreciation or exhaustion must be based on the cash value of the property where it is acquired by the issuance of shares of capital stock. The only cash value which the patent license had in 1911 was $1,375, and we do not think that it had a greater value on March 1, 1913. We therefore are of the opinion that only one-fifteenth of $1,375 is a legal deduction from gross income in respect of depreciation upon the patent license for each of the years 1919 and 1920.
With respect to the second question in issue, we are of the opinion that the depreciated cash value of the patent license at January 1, 1919, and January 1, 1920, may properly be included in invested capital; in other words, seven-fifteenths of $1,375 for 1919 and six-fifteenths of $1,375 for 1920.