Appeal of **UNION METAL MANUFAC-**          Docket No. 35.
**TURING COMPANY.**

A taxpayer holding patents and exercising the rights under them in the conduct of its business is entitled to a deduction for their exhaustion under the Revenue Act of 1918. Failure by the taxpayer to claim such deduction in its original return does not constitute the exercise of an election or option and does not preclude the claiming of such deduction later.

Submitted December 13, 1924; decided January 27, 1925.

*Jesse I. Miller, Esq.*, for the taxpayer.

*A. Calder Mackay, Esq.*, and *Percy S. Crewe, Esq.*, (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

*Robert N. Miller, Esq.*, Amicus Curiæ.

Briefs of Amici Curiæ were also filed by George E. Holmes and Randolph E. Paul, Charles W. Littlefield, John S. Prescott, Robert

N. Miller and John E. McClure, Robert H. Montgomery, and Henry F. Wolff, Esqs.

Before the Board, *En Banc.*

This appeal was heard on October 25, 1924, upon a stipulation of facts and certain exhibits filed by the parties, from which the Board makes the following:

### FINDINGS OF FACT.

The taxpayer, an Ohio corporation, is in the business of manufacturing metal columns, lamp posts, and similar articles. During the year 1918 and prior years the taxpayer manufactured its products under certain patents owned by it, which were acquired by it during the years 1906 to 1908, inclusive, at a cost of $38,285.94. On March 1, 1913, these patents had a fair market value of $135,-000, and on that date they had a remaining life of ten years, five and one-half months. The ownership of said patents was a material income-producing factor to the taxpayer during the year 1918. The taxpayer did not claim any deduction on account of depreciation of said patent on its original income and profits tax return for the year 1918. A revenue agent, examining the taxpayer's books, recommended the allowance of deductions for exhaustion of patents based upon the cost of the patents. The taxpayer then filed an amended return claiming such deductions based on the value of the patents at March 1, 1913. The Commissioner disallowed the deduction so claimed and determined a deficiency in tax for the year 1918 in the sum of $2,114.47. From such determination this appeal was taken.

In addition to the patents mentioned above, the taxpayer owned one patent acquired in 1905, of which neither the cost nor the market value at March 1, 1913, appears; two patents acquired in 1910 at a cost of $985.97, the market value of which at March 1, 1913, does not appear; and one patent acquired in 1912 at a cost of $53.54, the value of which on March 1, 1913, does not appear.

### DECISION.

The deficiency should be recomputed in accordance with the following opinion. Final determination will be settled on consent or on seven days' notice in accordance with Rule 50.

### OPINION.

IVINS: The taxpayer was the owner of certain patents used in its business of manufacturing articles of metal work. In its original income and profits tax return for 1918 it claimed no deduction for the exhaustion of these patents. It later proposed to claim such a deduction based on the value of the patents at March 1, 1913, but the Commissioner refused to permit the deduction to be then taken, and determined a deficiency. From this determination the taxpayer has appealed.

Counsel for the taxpayer and the Commissioner, and numerous *amici curiæ,* in their arguments and briefs in this appeal, have constantly referred to the deduction in dispute as one for *depreciation.*

This word, as it was used in the Corporation Tax Act of 1909, was explained by the Supreme Court in *Von Baumbach* v. *Sargent Land Company*, 242 U. S. 503, 524, when it said:

> What was here meant by "depreciation of property"? We think Congress used the expression in its ordinary and usual sense as understood by business men. It is common knowledge that business concerns usually keep a depreciation account, in which is charged off the annual losses for wear and tear and obsolescence of structures, machinery, and personalty in use in the business.

But the word has been regarded by some courts as having a broader meaning, as we point out in *Appeal of Even Realty Company*, 1 B. T. A. 355, and a certain amount of confusion has resulted. This confusion seems to us probably responsible for some of the inconsistencies in rulings made by the Treasury Department in the past few years, and for the position taken by the Commissioner in the instant appeal.

In arguing that patents do not necessarily *depreciate*, the Commissioner urges that during portions of their lives they may give rise to appreciation in the value of good will. It is pointed out that certain authorities on accountancy recognize the practice of lumping patents and good will in one account and carrying that account undiminished from year to year upon the theory that it simplifies bookkeeping. This is undoubtedly true. It is much easier to appraise all intangibles together than separately—for the appraisement is usually made by subtracting a reasonable return on the tangible investment from the returns of the entire business and capitalizing the balance. The combination of patents and good will is proper enough in computing invested capital under those provisions of the statutes in which patents and good will are treated alike, but it does not follow that the same practice will work properly in computing deductions for exhaustion, for patents are by nature exhaustible and good will ordinarily is not.

It may be true that the exercise of a monopoly, under a patent, may tend to build up a good will increasing in value as rapidly or more rapidly than the patent is exhausted. Good will is something that grows out of the general conduct of the business. It is attributable under different circumstances to any or all of several items: patent monopoly, trade mark monopoly, a recognized location of the place of business, superior quality of goods, reputation for business integrity, courtesy or liberality, advertising, etc. And nothing in the statutes requires or permits the increase in good will value to be offset, in the computation of annual income, against the deductions allowed for wear and tear of the machinery or the cost of materials entering into superior products, the rent or wear and tear of a favorably located place of business, the salaries paid to secure integrity or courtesy of officers and employees, the cost of advertising, *or the exhaustion of patents*. The only reason for tying the growth of good will up with the exhaustion of patents, rather than with rents, salaries, wear and tear of machinery, or advertising costs, is that good will and patent values are both intangible and are more difficult of separate appraisal than the other items. To our minds this is no justification for failing to apply the statutes according to their intent. It is frequently difficult to attribute the value of real estate

to land and structures or to land and timber, respectively, but that does not justify a contention that the buildings are not subject to wear and tear nor the timber to depletion. If wear and tear in a building can not be offset by appreciation in value of the asset itself (as we held in the *Even Realty Co.* appeal), *a fortiori*, exhaustion of a patent cannot be offset by appreciation in a different asset, good will.

The Commissioner urges that in some cases the value of patents diminishes with the lapse of time and in others it does not; that the taxpayer's judgment is, at least *prima facie*, the test of whether a particular patent or group of patents belongs in one class or the other; and that the taxpayer's original return for a given year constitutes an irrevocable classification. But he follows A. R. M. 209—C. B. 1-1, 176—which holds that the taxpayer's classification of a patent in one year is not binding in a subsequent year. This means that the same patent may partake of the nature of an exhaustible or wasting asset in 1916, a non-wasting asset in 1917, a wasting asset in 1918, and so on, without any change in the nature of the patent, the nature of its use, the nature of the business, and without any other reason but the ignorance or carelessness of a clerk in preparing tax returns.

It is unnecessary for us to dwell upon the unsoundness of a rule that the nature of a capital asset may depend upon the mistake of a bookkeeper, for we do not concede that a patent can have more than one nature. It is, of necessity, a wasting asset. It is a monopoly with a definitely and strictly limited life. The *benefits* derived under a patent may in effect be prolonged by the issuance of new patents, just as the benefits of a lease may be prolonged by new leases—but after the expiration of the original patent, as after the expiration of the original lease, the benefits and values are not attributable to it but to the new ones.

We have been shown nothing in any of the revenue acts nor in general rules of law to the effect that deductions for exhaustion, wear and tear or obsolescence in the computation of taxable income should be governed by one rule in the case of tangible assets and leases and by another rule in the case of patents. The theory of these deductions is the allowance of a return to the taxpayer of his capital investment before taxing him on a profit derived in part from the exhaustion or using up of his capital. *Cf. Appeal of W. J. Ostheimer*, 1 B. T. A. 18, *Appeal of Brevoort Hotel Co.*, 1 B. T. A. 132. If we are taxing a *gain*, then

In order to determine whether there has been gain or loss, and the amount of gain, if any, we must withdraw from the gross proceeds an amount sufficient to restore the capital value that existed at the commencement of the period under consideration. *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179, 185.

Section 214 (a) (8) of the Revenue Act of 1918 provides for the deduction of a reasonable allowance for exhaustion, etc., of *property used in the trade or business*. We know of no ground for holding that this means *all property except patents*. We not only have no right but in this case can find no sensible reason to write such an exception into the statute.

It may be that in some cases patents *appreciate* in value for a time and that there is no *depreciation* in the broader sense of the word, but by the very nature of a patent it is invariably subject to

*exhaustion*, and the right to a deduction therefor is not precluded by the existence of an appreciation which may or may not be realized at some future time, but which is only taxable when realized. Everything we said in the *Even Realty Co.* appeal, *supra*, with respect to deductions for wear and tear of machinery and buildings, and in the *Appeal of Grosvenor Atterbury*, 1 B. T. A. 169, with respect to exhaustion of leases, applies equally to deductions for exhaustion of patents.

The mere failure of a taxpayer to take the proper deduction in each year does not permit him to take advantage of his mistake through an incorrect return in a later year, nor does it permit the Commissioner to compel an incorrect return. The law does not contemplate the adjustment in any part of an incorrectly computed tax by the incorrect computation of another tax. Unless barred by the statute of limitations, a taxpayer is not precluded from demanding a correct computation of his tax for a past year on the facts as they existed, whether originally reported or not.

The Commissioner entered into a stipulation with the taxpayer, for the purposes of this appeal, that the patents under which its products were made had been acquired by it during the years 1906 to 1908, inclusive, at a cost of $38,285.94; that they had a fair market value on March 1, 1913, of $135,000, and that on said date they had a remaining life of ten years five and one-half months. He did not plead any other facts or indicate any desire to have the facts shown otherwise. He did not plead that there were other patents to which the taxpayer's income was in part attributable or that the deduction taken by the taxpayer in its original return for exhaustion, wear and tear, and obsolescence of assets was based in whole or in part upon any patents. On the contrary, he stipulated "that the taxpayer did not claim or take any deduction on account of depreciation of said patents in its original return for the year 1918." The taxpayer was justified in believing that the appeal would be decided upon the stipulated facts. It was understood that the deduction originally claimed was attributable to assets other than patents, and that any allowable deduction attributable to patents would be in addition thereto.

But the Commissioner in his brief takes the position that the burden is on the taxpayer to show that the amount of $14,061.48, claimed as a deduction for exhaustion, wear and tear, and obsolescence in the original return, and allowed by the Commissioner, is insufficient to constitute a reasonable allowance with respect to all assets. We think this burden was fairly met by the stipulation that no deduction had been taken on account of depreciation of patents. The answer "yes" in the original return, to the question, "Has adequate provision been made in the expense accounts of the company for (a) losses of every kind? (b) depreciation?" is shown by the stipulation to have been an erroneous statement of fact and can have no weight with this Board.

The Commissioner also points out that the taxpayer's amended return carried data showing that the taxpayer owned patents issued from 1905 to 1912, inclusive. Taxpayer's counsel admits that it had four patents in addition to those issued in 1906–1908, but they were not included in those of which the value was stipulated. Whether or not the taxpayer is entitled to deductions on account of the value of

these additional patents need not concern us. The taxpayer in its petition did not demand any such allowance. Any additional capital value represented by these patents is attributable to them, not to the group covered by the stipulation, and we are concerned only with those in that group.

The Commissioner stipulated that "said patents had a remaining life of ten years five and one-half months." He now suggests that this was an *average* life; that the proper method of computing the exhaustion of patents is by distributing the basic value of each patent over its particular remaining life; and that there is no justification, except in extraordinary circumstances, for averaging the lives of patents. When the stipulation was made he apparently thought that in this case a distribution of the total value of the patents under consideration over their average life would be a proper method of computing a reasonable allowance if any allowance were deductible. His action certainly justified the taxpayer in believing that to be his position. Otherwise, the taxpayer would unquestionably have at least attempted to prove the values of the several patents and their respective lives. The Commissioner's stipulation did not even use the word *average*. He agreed for the purposes of this appeal *that the patents had a remaining life* of ten years five and one-half months, and we do not think it is proper for him at this time to contend that this was only an average and that an average can not be the basis of a correct computation. We regard the Commissioner as bound by the stipulation.

The deficiency should be recomputed in accordance with the principles of law set forth in this opinion and on the basis of the facts as stipulated.