## APPEAL OF ST. LOUIS SCREW CO.

Docket No. 2077. Submitted May 28, 1925. Decided September 28, 1925.

A corporation in 1911 issued its entire capital stock as a part consideration for the assets of a going business, including tangibles, patents, and good will, and, as a further consideration therefor, assumed all of the outstanding liabilities, the tangibles alone having a cash value in excess of the par value of the capital stock plus the liabilities assumed and the patents and good will also each having a cash value: Held, that under the Revenue Act of 1917 that portion of the total consideration consisting of the liabilities assumed by the corporation should be applied against the tangible assets, and the capital stock should be allocated to the remaining tangibles, patents and good will acquired according to the cash value of each class of assets at the date of acquisition; that the excess of the cash value of the net tangibles over the amount of the capital stock allocated to them constitutes a paid-in surplus; and that the corporation is entitled to include in

invested capital the cash value of the patents not in excess of the par value of the capital stock allocated to them, and the cash value of the good will not in excess of the capital stock allocated to it and subject to the 20 per cent limitation imposed by the Act. *Held further*, that under the Revenue Act of 1918 the capital stock issued should be allocated to tangibles and intangibles according to the cash value of each class of assets at the date of acquisition, and the excess of the cash value of the tangibles over the par value of the capital stock allocated to the tangibles constitutes a paid-in surplus, and the corporation is entitled to include in invested capital the cash value of the intangibles not in excess of the par value of the capital stock allocated to them and subject to the 25 per cent limitation imposed by the Act.

*R. M. O'Hara, Esq.*, for the taxpayer.
*J. Harry Byrne, Esq.*, for the Commissioner.

### Before JAMES, SMITH, and TRUSSELL.

This appeal is from the determination of a net deficiency in income and profits tax for the fiscal years ended June 30, 1917, June 30, 1918, and June 30, 1919, of $14,679.32.

### FINDINGS OF FACT.

1. The taxpayer is a Missouri corporation organized April 15, 1911, with a capital stock of $200,000, to take over a going business conducted by the stockholders of a corporation of the same name whose charter had expired on November 26, 1908. The authorized and issued capital stock were the same in amount as that of the expired corporation and the shares of stock of the taxpayer were issued to the stockholders of the expired corporation share for share. The minutes of a meeting of the stockholders of the expired corporation, dated April 25, 1911, provide in part:

Edward J. Miller, President, reported to the meeting that a new Corporation had been lately organized under the laws of the State of Missouri, with a Capital Stock of $200,000.00, bearing the name of St. Louis Screw Company and that a charter had been issued to it by the Secretary of State of the State of Missouri, April 15, 1911; also that it was the wish of the Stockholders of the old St. Louis Screw Company, a dissolved Corporation, that their President and Directors transfer and convey to said newly created Corporation, all of the assets and property, real, personal and mixed, of said old Corporation for a nominal consideration, said newly created Corporation to receive the same and assume all the obligations, liabilities and unfulfilled and unperformed contracts of said dissolved Corporation and carry out the same and, in short, succeed to its business and good will and in consideration of such transfer to issue to the shareholders of the old Corporation, stock of the new in exchange for the old.

The minutes of a meeting of the stockholders of the taxpayer held immediately after the meeting above referred to and dated April 25, 1911, provide in part:

It was thereupon unanimously resolved that the Directors of this Company acquire from the President and Directors of the dissolved or expired corporation known as the St. Louis Screw Co., all of the business and assets, real, personal and mixed, and the good will of said dissolved corporation, at and for the consideration of Two hundred thousand Dollars ($200,000.00), this Company, as a part of the consideration for the conveyance of such business, assets and goodwill, to assume all of the obligations and liabilities of said dissolved corporation and the fulfillment and complete performance of all its unfulfilled and outstanding contracts and agreements, to the end that this newly created Company may succeed to all of the rights of the former Company, asuming as part of the transaction all of its liabilities.

2. The taxpayer acquired net tangible assets on April 25, 1911, of a value of $416,174.26. It also acquired two income-producing patents, as follows:

| Date of issuance | No. | Description |
|---|---|---|
| May 30, 1905 | 791201 | Machine for grinding screw-cutting dies and chasers. |
| Sept. 28, 1909 | 935315 | Machine for cone pointing and gimlet pointing of lag and coach screws and similar articles, by one operation. |

These patents were originally applied for in the name of Edward J. Miller, who assigned all his rights in them to the St. Louis Screw Co. prior to the dates of issuance to the above-named corporation. The first-named patent, No. 791201, is for a die grinder, the office of which was explained as follows:

In the production of screws and bolts there are required threading dies. These dies are a combination of four pieces that go into a head. On the revolving of this head a screw or bolt is threaded thereby. These dies are removable from the head and require rethreading at times, and also regrinding. Previous to this invention those dies were ground by hand and consequently there was not the accuracy obtained therein that this machine keveloped; and it also does the work much more rapidly.

Patent No. 935315 is for the production of a gimlet pointer and was described as follows:

The gimlet pointer is a machine that is used to perform a dual operation as compared with former methods. In the production of lag screws, which is a part of our manufacture, we used this equipment on the operation—in a part of the manufacture—taking a blank that had been headed and producing by this machine a point and a thread on the pointed portion, thereby reducing the operation as compared with the former methods, and also adding to the production.

The taxpayer did not manufacture and sell the machines upon which it had patents. It had an arrangement, however, with the

National Machinery Co., of Tiffin, Ohio, for the manufacture and marketing of them. The taxpayer obtained a royalty on the sales made of these machines. The amounts received from royalties on the sale of the patented machines is shown by the following:

*Statement of royalties received from patents.*

| Year ending— | Patent No. 935315. | Patent No. 791201. |
|---|---|---|
| June 30, 1907 | $7, 400. 00 | |
| June 30, 1908 | 3, 700. 00 | |
| June 30, 1909 | 1, 875. 00 | |
| June 30, 1910 | 4, 000. 00 | $600. 00 |
| June 30, 1911 | 2, 400. 00 | 825. 00 |
| Total | 19, 375. 00 | 1, 425. 00 |
| Average royalties for period | 3, 875. 00 | 712. 50 |

3. The net tangible worth—that is, capital stock plus the surplus—of the business for the fiscal periods ended June 30, 1908, to June 30, 1911, inclusive, and the net earnings exclusive of royalties from patents were as follows:

| | Net worth. | Net earnings. |
|---|---|---|
| June 30, 1908 | $312, 470. 70 | $40, 716. 78 |
| June 30, 1909 | 307, 965. 88 | 14, 620. 18 |
| June 30, 1910 | 398, 341. 34 | 97, 275. 46 |
| June 30, 1911 | 421, 311. 42 | 33, 745. 08 |
| Yearly average | 360, 002. 23 | 44, 589. 38 |

4. In the audit of the taxpayer's income and profits-tax returns for the fiscal years ended June 30, 1917, June 30, 1918, and June 30, 1919, the Comissioner made no allowance for any deduction from gross income in respect of the exhaustion of patents owned, and excluded from claimed invested capital the claimed value of patents in excess of $1,739.43 and the claimed value of good will.

5. The actual cash value of tangibles, patents, and good will paid in for shares of stock of the taxpayer upon its organization in 1911 were as follows:

| | |
|---|---|
| Tangibles | $416, 174. 26 |
| Patents | 30, 448. 26 |
| Good will | 42, 935. 75 |
| Total | 489,558.27 |

6. The Comissioner denied the taxpayer's claim for a reduction in tax liability under section 210 of the Revenue Act of 1917, and section 328 of the Revenue Act of 1918, for the alleged reason that the profits taxes for the years involved were not in excess of the amounts of taxes paid by approved representative concerns.

7. The Commissioner computed the additional income tax of 4 per cent imposed by the Revenue Act of 1917 upon the portion of the net income of the fiscal year ended in 1917 which the number of months in 1917 is to twelve months, this computation being made upon the portion of the net income of the fiscal year after applying the credit of profits tax to the whole year's fiscal income and not by applying the 1917 credit to the proportion of the fiscal year's income.

## DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 15 days' notice, in accordance with Rule 50.

## OPINION.

SMITH: This appeal presents for determination the following questions:

(a) The cash value of two patents at the date of acquisition by the taxpayer, namely, April 25, 1911.

(b) The cash value of the good will of a business acquired by the taxpayer in exchange for shares of stock at April 25, 1911.

(c) Whether the taxpayer is entitled to include in invested capital for the fiscal years ended June 30, 1917, June 30, 1918, and June 30, 1919, any part of the cash value of the patents and good will acquired at organization in 1911.

(d) Whether the taxpayer is entitled to claim as a deduction from gross income for each of the tax years above mentioned an amount representing the exhaustion of patents.

(e) Whether the Commissioner erroneously disallowed the taxpayer's claim to classification and redetermination of excess-profits tax for the fiscal years 1917 and 1918 under the provisions of section 210 of the Revenue Act of 1917 and section 328 of the Revenue Act of 1918.

(f) Whether the Commissioner erred in his computation of the additional 4 per cent tax provided by section 4 of the Revenue Act of 1917 as applied to the income tax due from the corporation for the fiscal year ended June 30, 1917.

1. As will be noted from the findings of fact, the taxpayer in 1911 issued its entire capital stock for a mixed aggregate of tangibles and intangibles, including patents and good will. The tangibles had a cash value greatly in excess of the par value of the total capital stock issued. The taxpayer contends that the patents also had a cash value and that the amount thereof was $45,875. This amount was obtained by capitalizing the earnings from patents over a series of years upon the basis of a 10 per cent return. The Commissioner

contends that this method of valuing patents is incorrect, inasmuch as it does not take into account the lessening in value of each patent through lapse of time. He states that the 1911 value of the patents should be determined in accordance with Hoskold's formula in the following manner:

Patent No. 935315 (dated in 1905):

| | |
|---|---:|
| Anticipated annual royalty | $4,475.00 |
| Life of patents from 1911 (years) | 11 |
| Anticipated future royalties from patents, $4,475 × 11 | $49,225.00 |
| $49,225 discounted to present worth, 1911, by application of Hoskold's Formula (interest on present worth and sinking fund provided for annually at the respective rates of 10 and 4 per cent) | $25,696.39 |
| 1911 value of patent | $25,696.39 |

Patent No. 791201 (dated in 1909):

| | |
|---|---:|
| Anticipated annual royalty | $712.50 |
| Life of patents from 1911 (years) | 15 |
| Anticipated future royalties from patents, $712.50 × 15 | $10,687.50 |
| $10,687.50 discounted to present worth, 1911, by application of Hoskold's Formula (interest on present worth and sinking fund provided for annually at the respective rates of 10 and 4 per cent) | $4,751.87 |
| 1911 value of patent | $4,751.87 |

We are of the opinion that the contention of the Commissioner upon this point is sound and that the cash value of the patents at the date of acquisition in 1911 should be placed at $30,448.26.

2. Upon organization in 1911 the taxpayer acquired the assets of a going business, including good will. The business had operated at a good profit for a number of years prior to 1911. It was manufacturing a standard line of hardware. We can not doubt that the good will of the concern had a considerable cash value. The taxpayer contends in its petition that it was $184,000. In a brief filed in support of the petition it contends that the value was $228,432.50. This is arrived at by capitalizing the net earnings for the four fiscal years ended June 30, 1908, to June 30, 1911, inclusive, upon a 6 per cent and a 12 per cent basis; that is to say, that after the allowance of a return of 6 per cent upon the average value of the tangibles, the balance of the average annual net earnings should be capitalized on a 12 per cent basis. We do not think that these percentages are correct to use in this case for the purpose of determining the value of good will. We have no definite information as to the net earnings of the corporation prior to the fiscal year ended June 30, 1907. Nor do we know the method of arriving at those net earnings—whether liberal salaries were paid to officers for the years ended June 30, 1908, to 1911, inclusive, nor whether sufficient depreciation was charged against the operating income of each year. Business men do

not ordinarily invest capital in a manufacturing enterprise subject to business hazards where the promise of return is only 6 per cent upon the capital invested. Not only is this true at the present time but it apparently was true in 1910 and 1911. We think that, for the purpose of determining the value of the good will of the taxpayer upon the evidence before us, an allowance should be made for a 10 per cent return upon the tangibles of a business before any portion of the earnings may properly be ascribed to good will. Furthermore, we think that in the instant case the good will should not be capitalized on less than a five-year purchase basis; in other words, the average net earnings in excess of a 10 per cent return upon tangibles should not be capitalized on less than a 20 per cent basis. By the use of the indicated percentages the value of the good will of the business in 1911 is found to be $42,935.75.

3. The next question to be considered is whether the taxpayer, in the light of the facts that it issued $200,000 capital stock of a mixed aggregate of tangibles, patents, and good will of an aggregate value of $489,558.27, composed of tangibles $416,174.26, patents $30,448.26, and good will $42,935.75, is entitled to include in invested capital any amount for the value of the patents and good will paid in for shares of stock. The Commissioner contends that it is not, for the reason that it must be assumed that the capital stock was issued first for the tangibles, and that, inasmuch as the tangibles were worth an amount in excess of the par value of the capital stock, no portion of the capital stock can be regarded as having been issued for patents and good will, and that this is true under both the Revenue Act of 1917 and the Revenue Act of 1918. Furthermore, that no paid-in surplus may be allowed in respect of patents and good will paid in to a corporation under either Act. The taxpayer contends, on the other hand, (1) that under neither the Revenue Act of 1917 nor the Revenue Act of 1918 need stock or shares be issued *specifically for intangible property as such* as a prerequisite to the inclusion of such intangible property in invested capital, the only requirement being, under the Revenue Act of 1917, that intangible property be *bona fide* purchased for and with shares in a corporation and, under the Revenue Act of 1918, that the intangible property be *bona fide* paid in for stock or shares; (2) that patents and good will or other intangible property may, under both the Revenue Acts of 1917 and 1918, be included in invested capital as paid-in surplus; and (3) that the only reasonable manner of applying the limitations set forth in section 207 of the Revenue Act of 1917 would be to measure the total stock issued against the cash value of intangibles, apply the limitation, and allow the inclusion of tangible assets at their cash value when paid

in, thereby satisfying every requirement and limitation provided for by the Act.

Section 207 of the Revenue Act of 1917, in so far as it is pertinent to the present inquiry, defines invested capital as:

(a) In the case of a corporation or partnership: (1) Actual cash paid in, (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation or partnership, at the time of such payment (but in case such tangible property was paid in prior to January first, nineteen hundred and fourteen, the actual cash value of such property as of January first, nineteen hundred and fourteen, but in no case to exceed the par value of the original stock or shares specifically issued therefor), and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year: *Provided*, That (a) the actual cash value of patents and copyrights paid in for stock or shares in such corporation or partnership, at the time of such payment, shall be included as invested capital, but not to exceed the par value of such stock or shares at the time of such payment, and (b) the good will, trade-marks, trade brands, the franchise of a corporation or partnership, or other intangible property, shall be included as invested capital if the corporation or partnership made payment bona fide therefor specifically as such in cash or tangible property, the value of such good will, trade-mark, trade brand, franchise, or intangible property, not to exceed the actual cash or actual cash value of the tangible property paid therefor at the time of such payment; but good will, trade-marks, trade brands, franchise of a corporation or partnership, or other intangible property, bona fide purchased, prior to March third, nineteen hundred and seventeen, for and with interests or shares in a partnership or for and with shares in the capital stock of a corporation (issued prior to March third, nineteen hundred and seventeen), in an amount not to exceed, on March third, nineteen hundred and seventeen, twenty per centum of the total interests or shares in the partnership or of the total shares of the capital stock of the corporation, shall be included in invested capital at a value not to exceed the actual cash value at the time of such purchase, and in case of issue of stock therefor not to exceed the par value of such stock.

Section 326 of the Revenue Act of 1918 defines invested capital as:

(a) That as used in this title the term "invested capital" for any year means (except as provided in subdivisions (b) and (c) of this section):

(1) Actual cash bona fide paid in for stock or shares;

(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus: *Provided*, That the Commissioner shall keep a record of all cases in which tangible property is included in invested capital at a value in excess of the stock or shares issued therefor, containing the name and address of each taxpayer, the business in which engaged, the amount of invested capital and net income shown by the return, the value of the tangible property at the time paid in, the par value of the stock or shares specifically issued therefor, and

the amount included under this paragraph as paid-in surplus. The Commissioner shall furnish a copy of such record and other detailed information with respect to such cases when required by resolution of either House of Congress, without regard to the restrictions contained in section 257;

(3) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year;

(4) Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest. * * *

At the outset it should be noted that this appeal does not involve the question of the inclusion in invested capital of any property which was paid in to the corporation except for shares of its stock. The tangibles, patents, and good will were paid in at incorporation for the total stock issue of $200,000. It therefore becomes unnecessary to consider whether property having a cash value might be included in invested capital when not paid in for shares of capital stock. It is unnecessary to consider, for instance, the question whether patents or any kind of intangibles may constitute invested capital when paid in.

As noted by the Supreme Court in *LaBelle Iron Works* v. *United States*, 256 U. S. 377:

A scrutiny of the particular provisions of section 207 [of the Revenue Act of 1917] shows that it was the dominant purpose of Congress to place the peculiar burden of this tax upon the income of trades and businesses exceeding what was deemed a normally reasonable return upon the capital actually embarked. * * * Cash paid in, and tangible property paid in other than cash, are confined to such as were contributed for stock or shares in the corporation or partnership; and the property is to be taken at its actual cash value " at the time of such payment." * * *

The incidence of the excess profits tax imposed by both the Revenue Act of 1917 and the Revenue Act of 1918 was upon the actual cash value of property embarked in the enterprise subject to the limitations imposed by each Act. Under the Revenue Act of 1917 invested capital includes actual cash paid in, the actual cash value of tangible property paid in other than cash for stock or shares at the time of payment, paid-in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year, the actual cash value of patents and copyrights not in excess of the par value of the stock or shares issued therefor, the actual cash value of good will and other intangible properties *bona fide* paid in for cash or tangible property or, in the event such intangible properties were *bona fide* purchased with stock or shares, then the actual cash value of such properties sub-

ject to certain limitations. Under the Revenue Act of 1918 invested capital consists identically of the same things and is computed in the same manner with the single exception that under the later Act patents and copyrights are regarded as intangible properties and may be included in invested capital subject to the limitations applicable to intangibles.

There can be no question as to the right of this taxpayer, under the provisions of both Acts, to include in invested capital the full cash value of tangible properties paid in for shares of stock at the time of payment, including the excess of the actual cash value of such properties over the total consideration paid therefor, a right which the Commissioner has properly conceded. But what was the par value of the shares of stock by which the excess of the value of the tangibles should be measured? What was the par value of the shares of stock, if any, issued for the patents? And, finally, was the good will *bona fide* purchased with shares of stock of this taxpayer?

As has been noted above, the taxpayer issued $200,000 capital stock for tangibles and intangibles having an aggregate value of $489,558.27. No part of this total issue was specifically issued for either the tangibles, patents, or good will. It is no more correct to say that the capital stock was issued for the tangibles than it is to say that it was issued for the patents and good will. We therefore think that the Commissioner erred in applying the entire amount of the capital stock issue against the tangibles and in refusing to allow the inclusion in invested capital of any amount whatever for patents or good will. Inasmuch as the entire capital stock was specifically issued for three classes of assets, we think that the amount thereof should be allocated to the three classes of assets according to their cash value at the time paid in. Upon such a computation it is found that $170,020 capital stock should be allocated to tangibles, $12,440 capital stock to patents, and $17,540 capital stock to good will. Since no part of the capital stock was specifically issued for any class of assets, the taxpayer is entitled to a paid-in surplus of the excess cash value of the net tangibles over the par value of the capital stock allocated to such assets:

| | |
|---|---:|
| Net cash value of tangibles | $416,174.26 |
| Par value of capital stock allocated thereto | 170,020.00 |
| Paid-in surplus | 246,154.26 |

Under the Revenue Act of 1917, a corporation is limited as to the amount of invested capital to which it is entitled in respect of the cash value of patents; such amount may not exceed the par value of the shares of stock issued therefor, which in the instant appeal was

$12,440. The cash value of the good will paid in for shares of stock in the instant appeal was $42,935.75. The par value of the capital stock allocated to good will was $17,540, and 20 per cent of the capital stock outstanding on March 3, 1917, was $40,000. The taxpayer is entitled to include in invested capital for 1917, patents and good will paid in for shares of stock, in the amounts of $12,440 and $17,540, respectively.

Summarizing the above, it will be noted that the taxpayer's invested capital for 1917 will be computed as follows, subject to adjustment on account of earnings, exhaustion of patents, or distributions between April 15, 1911, and January 1, 1917:

| | |
|---|---:|
| Tangibles paid in for stock | $170,020.00 |
| Patents paid in for stock | 12,440.00 |
| Good will paid in for stock | 17,540.00 |
| Paid-in surplus (tangibles) | 246,154.26 |
| Total | 446,154.26 |

Under the Revenue Act of 1918, patents are specifically classified as intangibles, and intangibles paid in for shares of stock may not be included in invested capital at an amount in excess of their cash value at the time paid in, the par value of the shares of stock issued therefor or 25 per cent of the amount of capital stock outstanding on March 3, 1917, whichever is lower. In computing the taxpayer's invested capital under the Revenue Act of 1918, the total issue of $200,000 of capital stock should be allocated to tangibles and intangibles according to the cash value of the tangibles and intangibles (including patents), at the time paid in in 1911. The amount of the capital stock allocated to the intangibles represents the par value of the shares of stock issued for such intangibles. The computation of the taxpayer's invested capital in respect of the assets paid in for shares of stock at incorporation in 1911 will be computed as follows:

| | |
|---|---:|
| Tangibles paid in for stock | $170,020.00 |
| Paid-in surplus (tangibles) | 246,154.26 |
| Intangibles (including patents) paid in for shares of stock | 29,980.00 |
| Total | 446,154.26 |

Both the above computations are as of the date of incorporation of the taxpayer and the values of patents in both are subject to modification as set forth below in the computation of invested capital for the taxable year.

4. In the audit of the taxpayer's tax returns for the three years under review the Commissioner has not allowed any deduction in respect of the exhaustion of patents. The deduction of such exhaus-

tion is clearly provided for by both the Revenue Act of 1917 and the Revenue Act of 1918. *Appeal of Union Metal Manufacturing Co.*, 1 B.T.A. 395. The deduction of an exhaustion for Patent No. 935315 should be upon the basis of the cash value of the patent in 1911 of $25,636.39, and of Patent No. 791201 upon the basis of the cash value of the patent in 1911 of $4,751.87.

5. The taxpayer alleges that the Commissioner erroneously disallowed the taxpayer's claim to classification and redetermination of excess-profits tax for the fiscal years 1917 and 1918 under the provisions of section 210 of the Revenue Act of 1917 and section 328 of the Revenue Act of 1918. But the taxpayer has submitted no evidence before this Board which would clearly show that it is entitled to have its tax determined under the above-mentioned sections of the Revenue Act of 1917 and the Revenue Act of 1918. In the light of this fact the action of the Commissioner upon this point must be sustained.

6. The taxpayer alleges error on the part of the Commissioner in determining its liability to the additional 4 per cent tax imposed by section 4 of Title I of the Revenue Act of October 3, 1917. This allegation of error is based upon the decision of the United States District Court for the Western District of Pennsylvania in the case of *Semple & Co.* v. *Lewellyn*, 1 Fed. (2d) 745. The point in issue is whether the income tax should be determined after the deduction of the excess-profits tax from the net income of the full 12 months' period or from such portion of the total net income as the number of months falling in the calendar year 1917 bears to 12 months. The taxpayer contends that the computation should be made after deducting from one-half of the net income for the fiscal year the excess-profits tax computed under the Revenue Act of 1917. This is the same question which was before the Board in the *Appeal of F. J. Thompson, Inc.*, 1 B. T. A. 535. It was there held:

> The additional income tax of 4 per cent imposed by the Revenue Act of 1917 upon the proportion of net income of a fiscal year ending in 1917 which the number of months in 1917 is to twelve months is computed upon the proportion of the net income of the fiscal year after applying the credit of profits tax to the whole fiscal year's income and not by applying the credit to the 1917 proportion of the fiscal year's income.

Finally, since the deductions above allowed in respect of exhaustion of patents reduce the taxpayer's invested capital by reason of exhaustion from April, 1911, to December, 1916, the recomputation of the deficiency should take into account any necessary adjustment of tax for those years, as required by section 281 (c) of the Revenue Act of 1924.

ARUNDELL not participating.