### APPEAL OF HARRY W. BOCKHOFF.

Docket No. 3206.    Submitted November 6, 1925.    Decided February 3, 1926.

Determination of the rate of exhaustion of a patent.

*Lawrence Baker* and *R. L. P. Wallace, Esqs.*, for the taxpayer.
*Ward Loveless, Esq.*, for the Commissioner.

### Before TRAMMELL and LOVE.

This is an appeal from the determination of a deficiency for the year 1919 in the sum of $887.17. The deficiency arises from the refusal of the Commissioner to allow a deduction for the exhaustion of a certain fractional interest in a patent.

#### FINDINGS OF FACT.

1. The taxpayer on June 30, 1917, acquired by gift a one-fifth interest in a certain patent No. 1,012,024, and, for the year 1919, received $27,163.20 as royalties, the same being his share of a 10 per cent royalty on net sales of the product manufactured under the patent. The Commissioner has refused to allow any deductions for exhaustion of the patent.

2. The circumstances of the acquisition of the interest in the patent were as follows:

The patent in question was originally issued December 19, 1911, to one J. R. Stephenson, an employee of the National Automatic Tool Co., an Ohio corporation. He assigned this patent to the corporation. In 1913 another corporation of the same name was formed under the laws of Indiana, which took over the assets of the Ohio corporation. All the assets of the Ohio corporation, with the exception of the patents, were transferred to the new corporation. This left the ownership of the patent in question in the Ohio corporation. William F. Bockhoff was the sole stockholder of the old corporation and, upon its dissolution, became the sole owner of this patent. William F. Bockhoff then made a contract or royalty agreement with the new corporation, by the terms of which the corporation was granted the exclusive right to manufacture under said patent, for which it was to pay 10 per cent on the sales of the machinery manufactured under this patent. Subsequently, as of June 30, 1917, the said patent was transferred as a gift by William F. Bockhoff to his wife and four children—one fifth to each. The taxpayer, Harry W. Bockhoff, was one of the children and, in 1919, received $27,123.20 as his share of the royalties.

3. The patent was on a certain machinery device known as a " Variable Speed Multiple Drill." The ordinary unpatented drills had but one speed, while, under the patent, drills were enabled to be operated at two or three rates of speed. It gave the choice of two or more independent changes of speed to each drill at the will of the operator, permitting the simultaneous drilling of different sized holes at different speeds in the same operation. This feature excited great interest in the tool industries and at once caused an increasing demand for this type of machine. There were several types of this machine, with prices ranging from approximately $1,000 to $4,000, and weighing from 3,000 to 10,000 pounds, depending upon the number of sizes of drills in each machine. The additional cost of a variable-speed machine over a single-speed machine ranges from $35 to $50, while the difference in selling price was approximately $160. The principal market of the device consisted of the manufacturers of automobiles, automobile parts, electrical equipment, heavy cast-iron parts, textile-making machinery, and auto-repair shops. By 1917 the advantages of the variable drills were well known in the tool industry and among the manufacturers requiring drilling machinery. The product had long passed the experimental stage and had become the standard equipment of leading manufacturers and was rapidly replacing the one-speed

drill. Its market and usage had become established in the machinery trade. The said National Automatic Tool Co. manufactured both the single-speed and the variable-speed drills, but the greater portion of the demand was for the variable-speed machine. The relative sales of the single-speed and the variable-speed models, for the period 1913 to 1917, were as follows:

| Year ending. | Year. | Total sales. | Single speed. | Change of speed. | Change of speed percentages. |
|---|---|---|---|---|---|
| Dec. 31 | 1913 | $74, 950. 47 | $19, 112. 37 | $55, 838. 10 | 74. 5 |
| Dec. 31 | 1914 | 95, 385. 31 | 38, 821. 82 | 56, 563. 49 | 59. 3 |
| Dec. 31 | 1915 | 397, 288. 44 | 125, 543. 15 | 271, 745. 29 | 68. 4 |
| First 6 months | 1916 | 325, 538. 91 | 51, 109. 61 | 274, 429. 30 | 84. 3 |
| June 30 | 1917 | 760, 239. 53 | 101, 872. 10 | 658, 367. 43 | 86. 6 |

It will be noted that the total sales of the variable-speed model for the fiscal year ended June 30, 1917, was $658,357.43 and constituted 86.6 per cent of all types of drills sold.

4. As of June 30, 1917, the National Automatic Tool Co. could reasonably anticipate and expect, for the remaining life of the patent (11 years, 5 months, and 19 days) sales of the patented device of the average annual sum of at least $600,000, and an annual income of $60,000 to the owners of the patent.

5. The taxpayer claims a value of $525,628.20 for the patent at the date of his acquisition, that his one-fifth interest was worth $105,155.64, and that the annual deduction for exhaustion of his interest should be $9,556.87. The Commissioner refused to allow any deduction, for exhaustion of the patent, from the gross income of the taxpayer.

6. The total value of the patent as of June 30, 1917, the date of acquisition by the taxpayer, together with the contract, was $337,000, and the value of the taxpayer's one-fifth interest was $67,400. The annual deduction for exhaustion of the taxpayer's interest in the patent over its remaining life of 11 years, 5 months, and 19 days, is $5,879.79.

#### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 10 days' notice, in accordance with Rule 50.

#### OPINION.

TRAMMELL: The sole question involved in this appeal is whether the taxpayer shall be allowed a deduction from his gross income for the year 1919, for exhaustion on his one-fifth interest in a pat-

ent acquired by gift as of June 30, 1917. Section 214 (a) (8) of the Revenue Act of 1918 provides:

Sec. 214. (a) That in computing net income there shall be allowed as deductions:

\*          \*          \*          \*          \*          \*          \*

(8) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.

This Board has already held that deductions for exhaustion of patents are allowable under this statute. *Appeal of Union Metal Manufacturing Co.*, 1 B. T. A. 395. The fact that it was a gift to the taxpayer and that he owned but a fractional part of the patent does not deprive him of the right to a deduction on account of the exhaustion thereof. The real question in this appeal is the determination of the value of the patent at the time of acquisition by the taxpayer and the proper rate of exhaustion.

It is very apparent that the patent had a substantial value at the time of acquisition. By means of the patent, the corporation manufacturing thereunder was able to create increasing sales in a practically unlimited market. In 1919 it paid the taxpayer $27,123.20 royalty, which represented but one-fifth of 10 per cent of the sales for that year. The question now is whether there is sufficient evidence to find a value for the patent from which the proper amount of exhaustion can be deducted. We must find a value as of June 30, 1917, the date of acquisition by the taxpayer, using the factors available at that time. The evidence is convincing that sales in the sum of at least $600,000 per year could have been reasonably anticipated under the circumstances. Witnesses familiar with the machinery market, and particularly this patented machine, who took into consideration the fluctuation of the market, possible business depressions, etc., testified that the minimum average of sales per year for 11 years should be well over $600,000. Although figures of sales in subsequent years have not been given us, it is evident that, since in 1919 the taxpayer received $27,123.20, representing one-fifth of 10 per cent royalty, the 1919 sales were greater than the estimate we are asked to accept.

Having established that $600,000 a year in sales could reasonably have been anticipated for the remaining life of the patent, the owners of the patent would then be assured of an income of at least $60,000 per year. The total return for 11 years would be $660,000.

In consideration of all the facts and circumstances of this appeal, we find that the value of the patent at the time acquired was $337,000. The taxpayer's interest therein would be one-fifth of this sum, or $67,400. The annual deduction for exhaustion of the tax-

payer's interest in the patent over its remaining life of 11 years, 5 months, and 19 days, is $5,879.79. We are of the opinion that the taxpayer is entitled to a deduction of $5,879.79, as exhaustion, from his gross income for the year 1919.