CHARLES RUBENS & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5736, 6356, 12569.    Promulgated March 26, 1927.

1. Upon the organization of a corporation, it issued stock for the tangible property of a preceding business to its owner. The intangible property was expressly transferred separately. *Held,* that the intangible property may not be included in invested capital and no apportionment may be made as in *St. Louis Screw Co.,* 2 B. T. A. 649.

2. The distribution in prewar years of an amount to stockholders in proportion to stockholdings, although not expressly declared as a dividend, may upon proper evidence be treated as such rather than as an expense and will not reduce prewar income in determining war-profits credit.

*Oscar M. Wolff, Esq.,* and *Stanley S. Waite, Esq.,* for the petitioner.

*J. W. Fisher, Esq.,* for the respondent.

These proceedings involve deficiencies for the following years, as noted:

| | |
|---|---:|
| 1918 | $1, 784. 53 |
| 1919 | 2, 332. 27 |
| 1920 | 2, 668. 48 |
| 1921 | 1, 363. 97 |

The deficiency for 1918 arises partly from the refusal of the respondent to include in the petitioner's prewar income certain amounts alleged to have been improperly classified as expense. The remaining portion of the deficiency for 1918 and the deficiencies for the other years arise from the respondent's refusal to include in invested capital any amount for the alleged value of good will.

### FINDINGS OF FACT.

The petitioner is an Illinois corporation with its principal office in Chicago. It is engaged in the business of importing and jobbing buttons.

Charles Rubens had conducted the business in his individual capacity under the style of Charles Rubens & Co. from 1884, and the petitioner was incorporated in December, 1911, for the purpose of taking over this business.

Under date of December 27, 1911, Charles Rubens addressed the following letter to the board of directors of the petitioner:

About July 1, 1884, the undersigned began business as Charles Rubens & Company for the purpose of buying and selling buttons, tailors' trimmings and clothiers' small wares. From then to the present day the undersigned has been successfully engaged in business, has built up a large and profitable trade, an enviable trade name and a valuable good will. The character and credit of the House of Charles Rubens & Company have always been beyond question; and since I desire to perpetuate that name, that business and that good will, and for the further purpose of permitting certain of my old and valued employees to participate, in a larger measure, in the reward of our combined efforts, I accordingly hereby make the following offer:

1: I am willing to sell and hereby offer to sell, assign, transfer and deliver to your Corporation all and singular the furniture, fixtures, machinery, implements of every kind, all cuts, plates and printed matter, and all other tangible inventoried property of every description belonging to the undersigned, doing business as Charles Rubens & Company, and all other goods, wares and merchandise of every name, nature and description, on hand and in transit, on consignment or on memorandum, and all bills receivable and accounts receivable, at and for the inventory prices thereof on this date, according to the inventory prepared on and as of this date, showing all of the assets of every character and description wheresoever situate, which the undersigned, as Charles Rubens & Company, owns or is interested in on this date; the said purchase price shall be paid to me by the issuance and delivery to me of full paid, non-assessable capital stock of the Corporation at par, and such stock when so issued shall be in full satisfaction and discharge

*pro tanto* of the amount of my subscription to the capital stock of the Corporation.

If such inventory shall amount to less than One Hundred and Seventy-five Dollars [sic] ($175,000.), I hereby agree to pay the difference to the Corporation; but if such inventory shall amount to more than One Hundred and Seventy-five Thousand Dollars ($175,000.), then the Corporation shall pay the excess to me.

2: As a part of this transaction, it is expressly understood that all orders, commitments, contracts, leases and other acts and things, as may have heretofore been entered into or done prior to the date hereof in respect to the business after the date hereof, shall be assumed by the Corporation on and as of this date, and fully and faithfully performed, paid, discharged and carried out by the Corporation as a part of the consideration of this transaction; and that the Corporation shall hereafter enter into all such contracts and other instruments as the undersigned shall deem necessary or proper fully and faithfully to effectuate and perform the understanding hereinbefore set forth.

3: As a part of this transaction, the undersigned will also transfer and assign to your Corporation all of the good will and trade as a going concern of the undersigned, Charles Rubens & Company. This good will and trade as a going concern will be conveyed for a nominal consideration, although in my judgment its fair cash value is actually in excess of the entire capitalization of the Corporation.

Under the same date three of the directors reported to the board that they had examined the assets of Charles Rubens & Co. and found the net tangibles (the total of the tangible assets, less the liabilities assumed), to be worth $174,300, and they further reported as follows:

The good will of Charles Rubens & Company, including its trade as a going concern, is, in our opinion, easily and fairly worth, at a conservative cash valuation, at least the sum of One Hundred and Seventy-five Thousand Dollars (175,000.).

Whereupon, the board of directors adopted a resolution authorizing the issue of capital stock of $174,300 to Charles Rubens for the assets of his business and approving the execution of the agreement hereinafter set forth, the following recitals being contained in the resolution:

WHEREAS, Charles Rubens & Company and Charles Rubens offer to sell all of its assets of every name, character and description and wheresoever situate which Charles Rubens & Company shall own or be interested in on December 27, 1911, at and for the inventoried prices thereof on said date; and

WHEREAS, Charles Rubens & Company also offers to sell its good will and trade as a going concern at a nominal consideration; and

WHEREAS, all of the said assets have been duly appraised by Isaac Benjamin, Godfrey M. Cohn and Robert Mayer, all of the Commissioners herein and Directors of this Company and they have reported the fair cash value to be at least One Hundred Seventy-four Thousand Three Hundred Dollars ($174,300.); and

WHEREAS, it appears to the Board that the said assets are of great value to and necessary for the business of this Corporation, and that said assets and

good will and trade and trade name will enable this Corporation to enter an established business forthwith with most excellent prospects of earning at once a large return upon its capital stock * * *.

Under date of December 31, 1911, the following agreement was entered into between Charles Rubens as " vendor " and the petitioner as 'the " company ":

WHEREAS, the Vendor is the owner of the assets hereinafter described; and

WHEREAS, the Company has been organized under the laws of the State of Illinois with an authorized capital stock of One Hundred and Seventy-five Thousand Dollars ($175,000.) divided into seventeen hundred and fifty (1750) shares of the par value of One Hundred Dollars ($100.) each; and

WHEREAS, the said assets have been appraised by Isaac Benjamin, Godfrey M. Cohn and Robert Mayer, the Commissioners to open books for subscription to the capital stock of said Company and said Commissioners have reported the fair cash value of said assets to be at least One Hundred and Seventy-four Thousand Three Hundred Dollars ($174,300.), and that the acquisition thereof is necessary for the business of the Company and to carry on its contemplated objects;

NOW, THEREFORE, THIS AGREEMENT WITNESSETH, That in. consideration of One Dollar and other good and valuable considerations, the parties hereto do hereby agree as follows, to wit:

1: That the Vendor has sold, assigned, transferred, set over and delivered and does hereby sell, assign, transfer, set over and deliver unto the Company, its successors and assigns, all of the following goods, chattels, assets and property, to wit: All and singular the furniture, fixtures, machinery, implements of every kind, all cuts, plates and printed matter, and all other goods, wares and merchandise of every name, nature and description on hand and in transit, on consignment or on memorandum, and all bills receivable and accounts receivable, according to the inventory made and dated December 27, 1911, which inventory is hereby made a part hereof with the same force and effect as if each and every item thereof was fully set forth in this agreement.

2: The Company hereby agrees, in consideration of the said sale, assignment and delivery to it of the assets, more particularly described in said inventory, the receipt whereof is hereby acknowledged, to issue to the Vendor and his nominees at such times, and in such amounts as the Vendor shall direct, certificates of stock of the Company in the aggregate amount of seventeen hundred and forty-three (1743) shares, which stock and shares shall be deemed to be and are hereby declared to be full paid and nonassessable shares, and not liable to any further call or assessment, and the holders of said stock and their transferees shall never in any event be liable to any further payment thereon.

3: Said assets are hereby accepted by the Company in full payment, satisfaction and discharge of the subscription to the capital stock of the Company made by the said Charles Rubens in the amount of One Hundred Seventy-four Thousand Three Hundred Dollars ($174,300.).

4: The Vendor hereby guarantees the collectibility of each and all of the bills receivable and accounts receivable set forth in the inventory and any and all accounts substituted or exchanged therefor, and further covenants and agrees that in case the same should not net the Company the sum of Fifty-six Thousand Sixty-one Dollars and Four Cents ($56,061.04), he will promptly make good and pay in cash any difference that there may be in the aggregate

amount of the net proceeds of said bills receivable and accounts receivable and said sum of Fifty-six Thousand Sixty-one Dollars and Four Cents ($56,061.04) ; and the Company covenants and agrees that in case the same should net more than the sum of Fifty-six Thousand Sixty-one Dollars and Four Cents ($56,061.04), .it will promptly pay in cash to the Vendor any excess over and above Fifty-six Thousand Sixty-one Dollars and Four Cents ($56,061.04).

5 : The Vendor hereby covenants and agrees with the Company, upon the request and at the instance of the Company, to execute all such further assurances and do all such things as shall reasonably be required by the Company for vesting in it the bills receivable and accounts receivable hereby sold and giving the Company the full benefit of this agreement.

6 : The Vendor, for and in consideration of the sum of One Dollar, lawful money of the United States of America, to him in hand paid, at or before the enscaling and delivery of these presents, by said Company, the receipt whereof is hereby acknowledged, has also granted, bargained, sold and assigned, and by these presents does grant, bargain, sell and assign unto the Company all of the good will of the party of the first part and all of his trade as a going concern, and also all of the right, title and interest of the party of the first part in and to the trade name of Charles Rubens & Company ; to have and to hold all and singular the said goods, chattels and property, also the said good will and all the trade as a going concern of the said party of the first part, and also all the right, title and interest of the Vendor in and to the trade name of " Charles Rubens & Company," unto the said Company, its successors and assigns, to and for its own proper use and behoof forever.

7 : And the Vendor does vouch himself to be the true and lawful owner of the said goods, chattels and property, and good will, trade and trade name, and has in himself full power, good right and lawful authority to dispose of the same in the manner as aforesaid ; and he does, for himself and his heirs, executors and administrators, covenant and agree to and with the said Company, to warrant and defend the said goods, chattels and property and the said good will, trade as a going concern, and the trade name, to the said Company, its successors and assigns, against the lawful claims and demands of all and every person and persons whomsoever.

The individual business of Charles Rubens was transferred to the petitioner effective as of January 1, 1912. All of the tangible assets and good will and trade name of the individual business was included in this transfer. The net value of the tangible property of the business at the date of the transfer was $174,300.

Capital stock of the petitioner of a par value of $174,300, being all of the stock except seven shares, was issued to Charles Rubens for the tangible property transferred. The remaining shares of the petitioner's capital stock were sold to seven other individuals for $700 cash.

The amount of $1 recited as the consideration for the good will and trade name was never paid to Charles Rubens.

After issuance of the certificate of incorporation a report was rendered to the Secretary of State of the State of Illinois, of which the following is a part:

The Commissioners, duly authorized to open Books of Subscription to the Capital Stock of CHARLES RUBENS & COMPANY, pursuant to license heretofore issued, bearing date the seventh day of December, A. D., 1911, do hereby report that they opened books of Subscription to the Capital Stock of said Company, and that the said Stock was fully subscribed; that the following is a true copy of such subscription, viz:

We, the undersigned, hereby severally subscribe for the number of shares set opposite our respective names, to the Capital Stock of CHARLES RUBENS & COMPANY, and we severally agree to pay the said Company, for each share, the sum of One Hundred Dollars ($100.).

| Name. | Shares. | Amount. |
|-------|---------|---------|
| Charles Rubens | 1, 743 | $174, 300. 00 |
| Isaac Benjamin | 1 | 100. 00 |
| Marcus D. Goodman | 1 | 100. 00 |
| Godfrey M. Cohn | 1 | 100. 00 |
| Emanuel Kinstler | 1 | 100. 00 |
| Frederick A. Drane | 1 | 100. 00 |
| Sidney Hess | 1 | 100. 00 |
| Robert Mayer | 1 | 100. 00 |

Amount of capital stock actually paid in ____ $175, 000. 00
Amount of capital stock not paid in ____ None
Stock subscribed and not paid, disposed of as follows: None
Capital paid in property, appraised as follows: $169, 420. 00

Goods, wares and merchandise, furniture, fixtures and bills receivable and accounts receivable appraised at and actually worth one hundred sixty-nine thousand four hundred and twenty dollars ($169,420.00)

The net tangible assets (the total tangible assets less the liabilities) of the individual business of Charles Rubens for the years 1907 to 1911 were as follows:

| | |
|---|---|
| 1907 | $130, 698. 74 |
| 1908 | 151, 331. 64 |
| 1909 | 161, 171. 86 |
| 1910 | 224, 257. 71 |
| 1911 | 210, 201. 80 |
| Total | 877, 661. 75 |

The net earnings for those years were as follows:

| | |
|---|---|
| 1907 | $25, 548. 94 |
| 1908 | 13, 031. 92 |
| 1909 | 67, 337. 36 |
| 1910 | 23, 884. 37 |
| 1911 | 30, 000. 00 |
| Total | 129, 802. 59 |

At the close of the calendar years 1912 and 1913 the petitioner, in addition to the regular dividend, voted and paid to its stockholders

an additional 10 per cent on its stock in the amount of $17,500 for each year.

At the close of the year 1913 the petitioner also charged to profit and loss and credited to surplus 5 per cent of the surplus of the company at the beginning of that year, amounting to $808.75. This amount was not distributed to the stockholders.

OPINION.

STERNHAGEN : Reduced to its essentials, the petitioner's first contention is that its original 1,750 shares of capital stock were issued for an aggregate of tangibles and intangibles and that by the application of the method approved in *St. Louis Screw Co.*, 2 B. T. A. 649, it may properly compute its invested capital by including a portion of the good will of the preceding business as property paid in for stock or shares, thus leaving some part of the tangible property to be treated as paid-in surplus so as to increase the invested capital *pro tanto*. It contends that the contract and resolutions covering the transactions at the time of its incorporation are to be read in their entirety and that, if properly so read, they indicate that Rubens turned in all of the property of his business, both tangible and intangible, for 1,743 shares of its capital stock.

We are impelled, however, by a fair reading of the written evidences of the transaction, to decide against the petitioner in this respect. The express language of the offer, the resolution and the contract, as well as the certificate of subscription filed with the Secretary of State, are unequivocal and unambiguous and leave no room for construction. The parties themselves deliberately and with unmistakable clearness chose to have the tangible property alone paid in for capital stock and the intangible property separately treated. This was their manifest intention and it was legally fulfilled. The fact that a subsequent revenue law makes their choice less fortunate to them than it might otherwise have been and imposes upon the corporation a greater tax than if another course had been adopted, can not serve to justify an interpretation of the transaction at variance with the clear language of the instruments by which it was performed. The argument that contracts should be interpreted as a whole and so as to give effect to each term is beside the point, for it is by thus reading the documents that we are led to the conclusion reached.

As no intangible property was in fact paid in for stock or shares, and since the statute does not provide for the inclusion of intangible property as paid in surplus, *Herald-Despatch Co.*, 4 B. T. A. 1096; *Shope Brick Co.*, 5 B. T. A. 1042; *Nature's Rival Co.*, 6 B. T. A. 294, it becomes unnecessary to consider or determine the value, if any, to

be ascribed to the intangible property of the preceding business at the time of the acquisition thereof by the petitioner. Upon this point the respondent is sustained.

The petitioner seeks an increase of its war-profits credit by including within its prewar net income the amount of $17,500 paid to its stockholders in 1912 and 1913 in proportion to their stock holdings. This it is entitled to do. The evidence is clear enough to establish that this was merely a method of distribution of earnings before adding the profits to surplus for the year. It was not done with the precision of the declaration of a dividend, but it was in fact a distribution to stockholders rather than an expense of operating the business. As such it was part of the petitioner's net income for prewar years in question and should be so treated in the determination of the credit. Upon this point the respondent is reversed.

*Judgment will be entered on 20 days' notice, under Rule 50.*