ACME MANIFOLDING COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 25194, 38687.   Promulgated October 23, 1931.

*Morris Metz, C. P. A.,* for the petitioner.
*Harold Allen, Esq.,* and *L. H. Rushbrook, Esq.,* for the respondent.

OPINION.

ARUNDELL : The principal invested capital issue is whether certain assets acquired by the petitioner from the predecessor partnership have been included in invested capital at the full amount allowed by the statute. Good will is sought to be included at $50,000, this being the amount which the petitioner says it agreed to pay and did pay therefor in cash. An actual cash value of $92,079.50 is claimed for the plant at the date of acquisition, which is $42,079.50 greater than the value recorded on the books and allowed by the respondent. The right of the petitioner to include in invested capital the remaining tangibles acquired from the partnership, at the net value carried on the partnership books, $26,384.94, is not in question.

We are unable to agree with petitioner's contention that the tangible property and good will were acquired separately. At the first meeting of the stockholders on June 17, 1914, the directors were authorized to acquire the partnership " plant and machinery, stock on hand, bills and accounts receivable, good will and trade name " for 98 shares of stock and $50,000 to be paid " out of the net earnings of the corporation as they may accrue and be available for that purpose." At the directors' meeting on the same day it was resolved that the " machinery, stock on hand, bills and accounts receivable, and name are of the value of at least $59,800." The bill of sale recited that the partners sold to the petitioner the partnership busi-

ness "together with machinery, stock on hand, bills and accounts receivable, good will and all the right to use the name Acme Manifolding Co." The only hint at any segregation of tangibles from intangibles is in the minutes of the first meeting of the incorporators of petitioner, where it is recited that the partners " estimate the good will of said business to be reasonably worth the sum of $50,000." All of the evidence indicates that the partners desired merely to incorporate their business in such a way as to retain control and to realize $50,000 out of the earnings and without any thought of segregating tangibles from intangibles. When they came to record the transaction on the books no record was made which would substantiate the claim now advanced. An item of $118.74 was entered which was designated " Good Will," but even that amount appears to be merely a balancing entry made to reflect the difference between the partners' capital account and the petitioner's liability to the partners, rather than an entry to actually reflect good will.

For the year 1920 respondent computed invested capital at $141,826.41. This sum included $50,000 as representing the value of the plant acquired from the partnership, adjusted to date to reflect subsequent additions and depreciation reserve. For the year 1921 the invested capital allowed by the respondent was $128,871.66, which included the plant at the same figure as for 1920, with similar adjustments for additions and depreciation. In neither year has the respondent allowed any value for good will.

We think the evidence warrants an increase in petitioner's invested capital. A very careful inventory was prepared of the articles and equipment going to make up petitioner's plant account at the time of acquisition, which inventory set forth in detail each item with a figure opposite it which the evidence fairly establishes to be depreciated cost, such figure representing the initial cost price depreciated at the rate of 10 per cent per year. If this were the only evidence it probably would not meet the test of the statute, as it is actual cash value of tangible property paid in for stock or shares which is included in invested capital and not depreciated cost. Throughout the examination of witnesses the words " cost " and " value " were loosely used and in this respect the record is somewhat unsatisfactory. However, the cross-examination of petitioner's witness, W. R. Bohmert, served to elicit the opinion that the fair market value of the property in dispute was roughly $100,000 at the time it was turned over to petitioner. Bohmert had been a partner in the business from its beginning and we are perfectly satisfied of his qualifications to express an opinion of value. We have reached the conclusion that the actual cash value of the plant at the time turned in to petitioner was $92,079.50. This amount

should be used in determining invested capital instead of the $50,000 allowed by the respondent.

We have found as a fact that the good will turned over by the partnership to petitioner in 1914 had an actual cash value of $50,000. Petitioner's predecessor, the Acme Manifolding Company, a partnership, was organized in 1899, with a capital of $2,400. From this humble beginning it had grown so that in 1914 it included among its customers some of the leading mercantile establishments of New York, including B. Altman, Gimbel Brothers, Jas. McCrery, Saks & Company, and Tiffany & Company, and was supplying 90 per cent of their needs in the line of manifolding books, etc. Its gross sales for the years 1911, 1912 and 1913, the three years immediately preceding the incorporation, were $230,807.58, $255,061.45 and $243,957.14, respectively, on which the net profits were, respectively, $18,184, $14,992.47 and $21,609.88. Petitioner's witness, Bohmert, whom we have already mentioned, testified to a value of good will in excess of $50,000. In reaching his conclusion he assumed an average value for tangibles used in the business of $80,000, and average earnings of $35,000. His estimate of earnings of $35,000 per year was excessive, as the average for the three years immediately preceding the incorporation was only something over $18,000. The rule of thumb formula used by Bohmert is one that has been frequently employed, and if we adjust the average income to the lower figure which we believe to be correct, the value for the good will set at $50,000 would not be excessive. While we do not base our conclusion on the application of a formula, we are convinced that the partnership had a substantial good will and that the earnings, testimony of Bohmert, and attendant facts justify a value in the amount of $50,000.

From the foregoing it is evident that the petitioner acquired a mixed aggregate of tangible and intangible properties for a consideration of $50,000 cash and $9,800 par value of petitioner's capital stock. The actual cash value of the tangibles was $118,472.94, while the value of the intangibles, consisting only of good will, was $50,000. In order to determine what part of the mixed aggregate was paid in for shares of stock, the amount of the cash consideration must first be applied against the value of the tangible assets. *Evansville Courier*, 23 B. T. A. 862, and cases therein cited. Under this rule we find that tangibles of the value of $68,472.94 and intangibles of the value of $50,000 were paid in for $9,800 par value of petitioner's capital stock. Allocating the issued stock to the two classes of properties according to the rule announced in *St. Louis Screw Co.*, 2 B. T. A. 649, the par value of stock issued for the intangibles amounted to $4,135.96. Twenty-five per cent of the $10,000

par value of petitioner's capital stock outstanding on March 3, 1917, is the lower of the three limitations on intangible values paid in for shares of stock includable in invested capital, under the provisions of sections 326(a) (4) of the Revenue Acts of 1918 and 1921; hence, the maximum amount of good will value which the petitioner is entitled to include in invested capital for 1920 and 1921, is $2,500.

It is alleged that the respondent erred in the apportionment of earnings applicable to dividends paid in 1920 and 1921. The 1918 and 1921 Acts provide in section 201 that, where dividends are paid after the first sixty days of any taxable year, the earnings shall be deemed to have been accumulated ratably during the period from the beginning of the taxable year to the date of distribution if the books do not show such earnings or profits. The respondent's action in spreading the earnings of the taxable years is proper in the absence of evidence of the earnings to the dates of distribution. *Gardner Governor Co.*, 5 B. T. A. 70. To show error in the respondent's method, petitioner offered proof of the gross sales and profits during the years in question and asks us to find that the profits to the dates of payment of the dividends are in the same ratio as profits for the whole year are to the gross sales. Too many other factors enter into the earning of profits for a given period to accept such a method in preference to the statutory plan. There being no proof that the earnings available for dividends were other than those determined by respondent, his action is sustained.

Several grounds are assigned in petitioner's claim for special assessment. The first ground is that invested capital can not be determined because the books do not reflect the true value of tangibles acquired for stock and good will for cash in 1914. The adjustments, which will follow as a result of our decision on the first issue, very largely destroy petitioner's argument in this particular. The second ground is that abnormalities exist because of the strike in 1919 and alleged improper proration of earnings to determine the amount of current profits available for dividends. The only proof made as to the strike is that it continued for eight weeks in July and August, 1919, making it necessary to fill accumulated orders, amounting to $75,000, in the next fiscal year. We do not know whether petitioner made any profit on those orders or how the strike otherwise affected its income, if at all. Not knowing how petitioner's income was affected by the strike, we can not say that it created an abnormality in either capital or income. The argument as to improper proration of earnings is wholly lacking in merit.

In his computation of the deficiencies for the fiscal years ended in 1924, 1925, and 1926, respondent computed exhaustion on petitioner's machinery, equipment, furniture and fixtures at the composite rate

of 10 per cent per annum. Without asking for a definite allowance, petitioner claims the allowance is inadequate, the basis for his contention apparently being that the assets were used more than the usual number of working hours per day. No evidence was offered as to the years 1920 and 1921 or concerning the furniture and fixtures. Such evidence as was offered as to the remaining taxable years and assets shows that some of the machinery had a useful life of less than ten years and others a longer life, based on an eight-hour working schedule. There is no testimony as to the average useful life of the assets. A taxpayer is not entitled to a higher composite rate than that allowed by showing that some of the items to which the rate was applied have a shorter life than the average period of usefulness of all the assets. The evidence does not warrant a disturbance of the respondent's allowance.

Petitioner also alleged error in disallowing moving expenses. The evidence on this consisted of testimony that petitioner moved its plant in January, 1926, and some of its equipment was not moved because not adaptable to the new quarters. This meager evidence is insufficient to form the basis of any material findings of fact and likewise insufficient to show error on the part of the respondent.

*Decision will be entered under Rule 50.*