*970 OPINION.
Trammell :
The Commissioner disallowed the amount set up on the books of the taxpayer as being the cost of patents acquired, to the extent of $10,000, upon the ground that the taxpayer had originally deducted the expenditures made in the development, of patents as expense, and upon the further ground that it was not shown that an expenditure to the extent of $10,000, which was capitalized upon the books of the taxpayer, had been actually made in acquiring said patents.
We think the evidence establishes the fact that the amount claimed as capital expenditures in acquiring the patents was actually expended for that purpose. The patents had been in the process of development for a long period of years beginning prior to 1913. The taxpayer had seven men who devoted at least one-half of their time in the development of the improvements and the patent ideas. The actual expenditure attributable to patents was at least the amount claimed by the taxpayer.
With reference to the question as to whether the taxpayer should be permitted to capitalize expenditures in the development of patents which had previously been deducted as an ordinary and necessary expense, we held, in the Appeal of Union Metal Manufacturing Co., 1 B. T. A., 395, that the provisions of the statute with reference to depreciation deductions was not in the alternative, and the fact that a taxpayer had not taken depreciation on patents but had permitted its invested capital to remain intact, would not prevent it from subsequently claiming the depreciation which had actually been sustained. The same is true with reference to the capitalization of patents. If the amounts expended were actually paid out in acquiring patents, the deduction of such amounts as ordinary and necessary expenses of carrying on a trade or business was not proper. The fact that a taxpayer did deduct such items or considered them as expenses does not alter the situation. Such treatment was erroneous. The taxpayer has no option to treat expense items as capital or capital expenditures as ordinary and necessary expenses of carrying on a trade or business and had a right, as it did, to change its erroneous accounting methods. The patents, when acquired, formed a part of the capital investment of the taxpayer and the costs thereof were not ordinary and necessary expenses of carrying on its trade or business. The amount of $10,000 set up by the taxpayer on its books on August 31,1915, is as much a part of the cost of patents as the attorneys’ fees or other expenses incurred in the actual procurement of said patents.
With respect to the debt of McKinley, alleged to have been ascertained to have become worthless in 19Í8 and for which a deduction in that year is claimed, the Board is not convinced, from the facts, that the said debt was ascertained to be worthless in that year. McKinley signed an affidavit in which he stated that on February 1, 1915, he was connected with the Gilliam Manufacturing Company and about that daté secured $10,000 from the company; that this amount was immediately turned over to B. T. Steiner and that he *971 had no knowledge as to whether it was retained by him or turned back to the company. After the discovery of the fact that McKinley had secured the money from the corporation he surrendered the stock which he had purchased and gave securities to guarantee the payment of the amount due by him. He was retained in the employ of the company until 1918 when he resigned. When he left the company all of the securities which he had given, including the land, were turned back to him. There is no evidence that the securities which were given back to him were worthless or that the taxpayer corporation made any effort to realize on such assets before they were turned back to McKinley or to ascertain the value thereof. There is no evidence that the assets given as security were not sufficient to save the taxpayer from loss if it had undertaken to realize thereon. A taxpayer is not permitted voluntarily to surrender securities not known to be worthless and given for the purpose of protecting it from loss on an indebtedness and charge off the debt. The fact that McKinley surrendered the stock on which he had paid $10,000, the fact that all the property which he had given for the purpose of indemnifying the taxpayer against loss was surrendered to him voluntarily when he left the company, and the fact that the taxpayer had no knowledge as to the value of the assets and made no effort to realize thereon, lead the Board to the conclusion that there was no actual bona fide debt existing when the amount was charged off on the books. The taxpayer is, therefore, not entitled to a deduction on account of a debt ascertained to be worthless.