## APPEAL OF GOODELL-PRATT CO.

Docket No. 287. Submitted December 5, 1924. Decided November 14, 1925.

The deduction, concurrently, as operating expenses, of expenditures made in the development of patents, processes, etc., does not bar their restoration to surplus upon a clear showing that they were in fact capital expenditures. *Appeals of Gilliam Mfg. Co.*, 1 B. T. A. 967, and *Union Metal Mfg. Co.*, 1 B. T. A. 395, cited and approved.

*Ralph L. P. Wallace, Esq.*, for the taxpayer.
*John D. Foley, Esq.*, for the Commissioner.

### Before MARQUETTE and KORNER.

This is an appeal from the determination of a deficiency in income and excess profits taxes for the years 1917, 1918, and 1919. The amount of the net deficiency for those years is $29,243.43.

### FINDINGS OF FACT.

1. The taxpayer is a corporation organized under the laws of Massachusetts in the year 1895, with its principal office at Greenfield. It is, and has been since the date of its organization, engaged in the business of manufacturing and selling tools. The stock of the corporation is closely held.

2. When the taxpayer commenced business it manufactured only one tool, namely, an automatic punch drill. From time to time it

developed and placed on the market other tools, until at the present time it manufactures and carries in stock over 2,000 different mechanics' tools. When a tool is developed and found to be successful, it is listed in the taxpayer's catalogue, which is issued once a year. A tool once brought out and listed is thereafter in stock, so that it is possible to-day to purchase any tool that the taxpayer has ever made and placed on the market. The taxpayer maintains, and has maintained for many years, a separate department for the purposes of working out new ideas and developing new tools, patents, secret processes, methods of manufacture, and special machinery. The expenses of this department consist and have consisted largely of salaries and amounts paid for consumable materials.

3. During the years 1909 to 1916, inclusive, the taxpayer expended $280,513.26 in developing certain patents, secret processes, methods of manufacture, special machinery, and new tools, in developing foreign markets, in gathering and compiling information relative thereto, and in establishing agencies, etc. These expenditures were charged to current expenses and claimed as deductions on income-tax returns for the years in which such returns have been required. From time to time appraisals were made of the intangible assets created through these expenditures and the appraised values thereof were set up on the taxpayer's books and credited to surplus.

4. The good will and other intangible assets, created by the taxpayer through the expenditure of the amount of $280,513.26 during the years 1909 to 1916, inclusive, as above set forth, had, on January 1, 1917, a total value of at least $280,513.26.

5. Upon audit of the returns for the years 1917, 1918, and 1919, the Commissioner eliminated from the taxpayer's invested capital the entire amount of good will shown by its books. The taxpayer thereupon claimed that, in lieu of the good will eliminated by the Commissioner, it should be allowed additional invested capital for the years 1917, 1918, and 1919, through the restoration to surplus of the amount of $280,513.26 expended during the years 1909 to 1916, inclusive, as above set forth, and charged to expense. The Commissioner disallowed the taxpayer's claim, and determined that there is a deficiency in tax in the amount of $71,863.09 for the year 1919, and overassessments of $36,889.83 and $5,729.83, respectively, for the years 1917 and 1918, making a net deficiency of $29,243.43.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 10 days' notice, in accordance with Rule 50.

## OPINION.

KORNER, *Chairman:* The only question presented by the record in this appeal is whether or not the taxpayer may include in invested capital for the years 1917, 1918, and 1919 the amount of $280,513.26 expended during the years 1909 to 1916, inclusive, for development of patents, secret processes, methods of manufacture, special machinery and new tools, foreign markets, etc., charged to expense concurrently with the transactions and deducted from gross income for income-tax purposes in those years.

The Commissioner admits that the amount involved was expended for the purposes stated, but contends, nevertheless, that the taxpayer is not legally entitled to restore this amount to surplus for invested capital purposes, for two reasons: (1) That as a matter of good accounting it is optional with the taxpayer whether expenditures of the character here under consideration shall be charged to a capital account or treated as cost of current operations, and since the taxpayer elected to treat them as cost of current operations concurrently with the transactions a revision of that election can not now be permitted; and (2) that though the Board should find that these expenditures were of a capital nature and erroneously treated on the taxpayer's books as charges against current earnings, the taxpayer has failed to show that through such expenditures it acquired anything of value.

The first contention of the Commissioner is in keeping with a policy long in vogue in the Bureau of Internal Revenue, which is best expressed by quoting below certain articles and excerpts from articles of Regulations 45 promulgated by the Commissioner under the authority conferred upon him by the Revenue Act of 1918:

ART. 840. *Surplus and undivided profits: additions to surplus account.*—A corporation's books of account will be presumed to show the facts. If it claims that its capital or surplus account is understated the burden of proof will rest upon it. Additions to such accounts will be accepted to the following extent:

\*        \*        \*        \*        \*        \*        \*

(3) Amounts which have been expended in the past for intangible property of any kind can be restored to capital or surplus account only to the extent that the corporation specifically paid such amounts for the intangible property as such.

ART. 841. *Surplus and undivided profits: limitation of additions to surplus account.*—Additions to surplus which a corporation may desire to make under the preceding article fall broadly into two classes:

(1) To correct returns of net income for prior years in which actual errors have been made, as for example where excessive depreciation has been deducted, additions to plant and equipment or other capital charges have been charged off as an expense, inventories have been taken upon a wrong basis of valuation, etc.

(2) To reinstate in surplus deductions from income which are as a matter of good accounting to some extent optional, such as experimental expenses,

patent litigation, development of good will through advertising or otherwise, etc.

Adjustments falling in class (1) will be permitted for all years whether before or after March 1, 1913, provided amended returns of net income are filed for each year in which an erroneous return has been made. * * * Adjustments falling in class (2) can not be permitted, as in such cases it is considered that the corporation has exercised a binding option in deducting such expenses from income. An election of this sort which was made concurrently with the transaction can not now be revised, and amended returns in respect thereof can not be accepted.

Art. 843. *Surplus and undivided profits: patents.*— * * * Where a corporation has charged to current expenses the cost of developing or protecting patents, no amount in respect thereof expended since January 1, 1909, can be restored in computing invested capital. In respect of expenditures made before January 1, 1909, a corporation now seeking to restore them must be prepared to show to the satisfaction of the Commissioner that all such items are proper capital expenditures * * *. Due consideration will be given to the facts in any case in which this rule seems obviously unreasonable.

Thus, in the Commissioner's first contention, there is brought sharply before us for consideration the question as to whether or not that part of Regulations 45, more particularly articles 841 and 843, which, basing itself on so-called good accounting, permits the restoration to surplus of certain capital expenditures previously recorded on the books as current expenses, and excludes others from like restoration, is in conflict with section 207 of the Revenue Act of 1917 and section 326 of the Revenue Act of 1918.

We have had occasion before to consider this question, in a somewhat limited way, in *Appeal of Gilliam Mfg. Co.*, 1 B. T. A. 967, citing *Appeal of Union Metal Mfg. Co.*, 1 B. T. A. 395. In the *Gilliam Appeal* the issue presented involved the right of the taxpayer to restore to surplus account and capitalize, for the purpose of computing the gain or loss resulting from the sale of patents, all expenditures made in the development of those patents which had previously been deducted in tax returns as ordinary and necessary business expenses. We considered the issue presented there from the standpoint of the law as we interpreted it and then stated our opinion, as follows:

If the amounts expended were actually paid out in acquiring patents, the deduction of such amounts as ordinary and necessary expenses of carrying on a trade or business was not proper. The fact that a taxpayer did deduct such items or considered them as expenses does not alter the situation. Such treatment was erroneous. The taxpayer has no option to treat expense items as capital or capital expenditures as ordinary and necessary expenses of carrying on a trade or business and had a right, as it did, to change its erroneous accounting methods. The patents, when acquired, formed a part of the capital investment of the taxpayer and the costs thereof were not ordinary and necessary expenses of carrying on its trade or business.

What we said there should be a sufficient answer to the question presented in the case at bar. It applies with equal force in every case

where the taxpayer, through erroneous accounting practice in years prior to the inception of the profits taxes, recorded on its books, as ordinary and necessary business expenses, expenditures made in the acquisition of additional assets, whether of a tangible or intangible nature. The Revenue Acts have consistently excluded such expenditures as deductions in computing taxable net income, and the fact that the taxpayer has deducted them in its income-tax returns, without any revision of that action by the Commissioner, does not bar their restoration to surplus upon a clear showing that they were in fact capital expenditures.

So much for the legal aspects of the question. However, we find that the Commissioner's action in this appeal in refusing to permit the restoration to surplus of the amount contended for by the taxpayer is predicated on a theory that the whole amount is made up of expenditures which, from the standpoint of good accounting, the taxpayer at its own option was at liberty to treat as additions to its capital investment or as proper charges against the current earnings of the years in which such expenditures were made. This gives rise to the question as to whether, from the standpoint of good accounting, it is possible so to divide accounting facts of an obviously homogeneous nature as to subject the subdivisions so created to two radically different treatments. For its answer we must venture for a moment into the field of accounting in search of the principles underlying the theory of accounting for expenditures of this character.

One of its leading practitioners has defined accounting as the science of accounts embracing their construction, classification, and interpretation. Another suggests that it is nothing more than a system of philosophy resting on the broad basis of business embracing the whole range of human endeavor. Like all other sciences not susceptible of mathematical demonstration, accounting is not an exact science. Whatever it has acquired in the way of wisdom has been the result of a thorough and painstaking study of the aspirations, efforts, successes, and reverses of business in all its ramifications. But it is founded upon certain fundamental principles which are universal and immutable and which give recognition to the fact that there is only one truth in everything and no half truth, or quarter truth, or approximations of the truth.

To hold that in every accountant or individual entrusted with the supervision or the keeping of the accounts of a business enterprise, or in the executive officers of such an enterprise, vests an option to treat certain expenditures in one of two ways, is entirely repugnant to the principles of accounting. It would deny accounting the true status which it has enjoyed in its relations to the progressive business body, that of a faithful adjunct, ever ready to interpret,

by its own system of philosophy, every business transaction according to the true facts.

The motive power behind any human endeavor is the purpose of that endeavor. So in business the motive power behind every business transaction is the purpose for which the transaction was entered into. Accounting seeks only to so record the facts as to bring forth and make evident the success or failure of the effort made to accomplish the purpose. This is the philosophy of accounting. Upon that solid foundation are its principles founded. So it is clear that the question of two or more diametrically opposite options in regard to the accounting treatment of certain facts never arises and never can arise.

True, as in all sciences which can not be mathematically demonstrated, we find any number of conflicting theories expounded by the leading practitioners of accountancy, but it is a far cry from the preachment of these theories to their consecration as sacred principles of accounting.

So we believe that from the standpoint of good accounting no right ever vested in any business enterprise to treat certain expenditures according to either of two diametrically opposed theories.

This brings us to the question as to whether or not the expenditures which this taxpayer seeks to restore to surplus account for invested capital purposes may be properly regarded as capital expenditures which were erroneously treated by the taxpayer as ordinary and necessary business expenses and deducted as such in its income-tax returns during the years 1909 to 1916, inclusive.

The term " capital expenditures " is largely an accounting term and belongs to the accountants' nomenclature. Since in the nature of human affairs, the effect of an expenditure concurrently with the transaction can not in any case be foreseen with absolute certainty, the accountant manifestly must be guided by the purpose and hope or expectation both as to the possible increase in income and as to permanency.

In his Applied Theory of Accounts, page 226, Paul J. Esquerré, C. P. A., defines capital expenditures as follows:

When subjected to a theoretic analysis, this term appears to apply to such expenses as, in the aggregate, represent the cost of the increased earning capacity of the enterprise as a whole or of particular parts thereof, which has been secured over the earning capacity known to exist before the said expenses were incurred.

So, too, William M. Lybrand, C. P. A., in his article on "Accounting of industrial enterprises," (Journal of Accountancy, December, 1908) defines the same term as follows:

With respect to items which may properly be considered as capital expenditures, it has been suggested as a working basis that no addition should be

made to the property accounts unless it can be clearly shown that they have increased the earning capacity of the plant. A simple, positive rule such as this might be all that is required, if the changes in the plant and the resulting increase in earning capacity were occasioned only by actual extensions or additions of property which had never before existed. But such is not the case. In every progressive manufacturing concern, alterations or additions to the plant are constantly being made for the purpose of simplifying the manufacturing processes and thereby increasing the output with the same expenditure for labor and materials, or in order to decrease those operating charges which are in the nature of overhead expenses required to be taken up in the cost of the product. As no alteration or addition to the plant is probably ever undertaken except for the purpose of increasing the earning capacity thereof, directly or indirectly, the literal application of the rule referred to is not possible, and it will be necessary to consider the nature of the various alterations, improvements, and additions, before an intelligent decision can be made as to their ultimate disposition.

To what extent these views are concurred in by the judiciary is best evidenced by the language of the United States Supreme Court when, in the case of the *LaBelle Iron Works* v. *United States*, 256 U. S. 377, after a most exhaustive discussion of the meaning under the law of the term "invested capital," it laid down the following definition:

When speaking of the capital of a business corporation or partnership, such as the act deals with, "to invest" imports a laying out of money, or money's worth * * * by the concern itself in acquiring something of permanent use in the business; in either case involving a conversion of wealth from one form into another suitable for employment in the making of the hoped-for gains.

All accounting authorities will agree that this definition of the court is in harmony with sound accounting principles.

The Commissioner admits that the expenditures which this taxpayer seeks to restore to surplus were made for the purposes hereinbefore stated. That they constitute capital expenditures we have no doubt. They were expended expressly for the purpose of increasing the earning capacity of the enterprise—in acquiring something of permanent use in the business.

That the taxpayer's efforts to accomplish the purposes for which these expenditures were made were successful is evident from a reading of our findings of fact. From a small enterprise whose products in 1895 consisted of a line of a score or so of tools and a limited local market it has grown to be a leader in its industry with a line of 2,000 different tools, all manufactured in its own plant, marketing its products throughout the entire world. It is for these reasons that we are unable to concur in the Commissioner's contention that, notwithstanding this large outlay of capital, the taxpayer acquired nothing of value which may be restored to its surplus account and included in invested capital. The evidence before us and our findings of fact justify no such conclusion.

Taxpayer is entitled to restore to its surplus account and include in its invested capital the sum of $280,513.26, representing capital expenditures previously charged as current expenses on its books and income-tax returns in error.