DRESSER MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 84795, 88294.   Promulgated July 27, 1939.

*George E. H. Goodner, Esq.*, and *Percy R. Everett, C. P. A.*, for the petitioner.

*F. S. Gettle, Esq.*, for the respondent.

OPINION.

MELLOTT: The Commissioner determined deficiencies in petitioner's income tax for the years 1933 and 1934 in the respective amounts of $3,990.57 and $9,702.32. Petitioner claims an overpayment of tax for the year 1933 in the amount of $8,215.67 and alleges that the Commissioner erred in determining $8,805 of the $9,702.32 as a deficiency in the year 1934. The proceedings were consolidated for hearing.

Certain affirmative allegations made by the respondent in his answer to the amended petition were abandoned. The questions to be decided may be succinctly stated as follows: (1) Are expenditures in the amount of $96,509.10, or any part thereof, made by petitioner in an unsuccessful attempt to develop a gas compressor engine, deductible from its gross income in 1933? and (2) Is the amount of $62,856.34 expended by petitioner in 1934 in a further unsuccessful attempt to develop a gas compressor engine deductible from its gross income for that year?

Petitioner, successor to the S. R. Dresser Manufacturing Co., is a corporation with its principal office at Bradford, Pennsylvania. It is engaged in the manufacturing business and for many years its principal products have been pipe line couplings and fittings.

The cost of compressor or "booster" plants used in keeping up the pressure in gas lines has always been considerable. In 1931 petitioner's officers conceived the idea of developing, and perhaps ultimately manufacturing and selling, a gas compressor engine which would cost much less than a booster plant and yet perform the same work. Petitioner was primarily interested in stimulating transportation of gas through pipe lines and thereby increasing its own business of manufacturing and selling pipe line couplings and fittings. Incidentally, it was also interested in, and anticipated the possibility of realizing, profit from the sale and manufacture of compressor engines.

In 1931 petitioner designed and began development work on what was characterized by the witnesses as "Engine No. 1," which it hoped and expected would suit the existing need. It employed an expert combustion engineer for consultation purposes and continued its experimental and development work throughout the years 1931 and 1932 and the major portion of 1933. Late in 1933 it was definitely determined that the experiment was a failure; that the engine would not accomplish what was expected of it; that no asset of any value had been created; and that petitioner had nothing for its expenditures. Accordingly the engine was scrapped, the blue prints were destroyed, and the project was abandoned.

During the three years of experimental work on Engine No. 1 petitioner expended the following amounts in its attempt to perfect the engine:

| | |
|---|---|
| 1931 | $28, 051. 01 |
| 1932 | 36, 387. 30 |
| 1933 | 32, 070. 79 |
| Total | 96, 509. 10 |

The amounts expended in 1931 and 1932 respectively were charged against surplus in 1933. At the end of 1933 petitioner's officers became concerned over the entries which had been made upon its books capitalizing the expenditures for 1931 and 1932, since no asset of corresponding value had been developed. After consulting with its accountants petitioner concluded that such expenditures constituted ordinary and necessary expenses of carrying on its trade or business and should be deducted from gross income in the year incurred.

The Commissioner determined a deficiency in income tax against petitioner for the year 1932 upon a theory not presently material. Petitioner sought a redetermination by this Board. Although it had claimed no deduction from gross income in its return for the year 1932 in connection with the expenditures made in an attempt to perfect Engine No. 1, it claimed the right to reduce income as reported in the original return by $36,387.30, alleging that this amount represented "expenses in connection with the development of a gas engine and compressor unit." This issue was decided against petitioner, the following language being used in the opinion:

\* \* \* It was the thought and intention of the petitioner and its officers at the time the experimental work was started on the gas compressor, in 1931, that a capital asset would be created. It was their intention to develop a machine which could be manufactured and sold at a profit. The distinction between the work to that end and the experimental work directly applicable to the manufacture of pipe couplings and fittings was carefully drawn and maintained. Throughout the years 1931 and 1932, the petitioner thought that the machine being developed would be workable, practicable, economical and salable, and if these views had proved to be true, there would never have been any doubt that the expenditures were properly capitalized. It was not until after the end of the taxable year, and in 1933, that doubts arose and it was decided that the machine which had been thought workable in 1931 and 1932 was of no practical value and that the amounts expended in connection therewith should be written off the taxpayer's books by allocation as business expenses to the years in which they were actually made. We express no opinion as to the year in which the expenditures so capitalized would become deductible, but do hold that they were properly capitalized during the taxable year and were clearly different from expenditures for experimentation and research directly connected with the manufacturing activities being carried on

during the current year. The deduction claimed is not allowable for 1932. *American Seating Co.*, 4 B. T. A. 649; *Forest Products Chemical Co.*, 27 B. T. A. 638; *John F. Canning*, 29 B. T. A., 99; *Acme Products Co., Inc.*, 24 B. T. A. 194. Cf. *Homer L. Strong*, 14 B. T. A. 902, wherein it was found as a fact that the machine in respect of which the expenditures sought to be deducted were made "was an absolute failure" in the taxable year. [*S. R. Dresser Mfg. Co.*, Docket No. 80177.]

The amounts expended in the years 1931 and 1932 were not claimed as deductions from gross income for those years (except as to the amount claimed in the proceeding above) and neither of said amounts has ever been allowed as a deduction. The amount expended in 1933 ($32,070.79) was deducted from gross income in petitioner's return for 1933, but was disallowed by the respondent.

Petitioner filed a claim for refund of taxes paid for the year 1931, claiming that the expenditures made in that year in connection with the development of Engine No. 1 should be allowed as ordinary and necessary business expenses. The claim for refund was rejected by the Commissioner on October 12, 1938.

For the year 1933 petitioner paid income tax as follows:

| | |
|---|---|
| March 15, 1934 | $2,053.92 |
| June 14, 1934 | 2,053.92 |
| September 15, 1934 | 2,053.92 |
| December 13, 1934 | 2,053.91 |
| Total | 8,215.67 |

The petition for 1933 (Docket No. 84795) was filed May 27, 1936.

At the end of 1933 the consulting engineer advised that there was no practical value in Engine No. 1 and no further effort was ever made to develop it. The need for an engine which would perform the work still existed and petitioner, hopeful that it could develop one which would be practical and efficient, designed, and in 1934 began work upon, Engine No. 2. There was little similarity between Engine No. 1 and Engine No. 2, but petitioner and its engineers, in working upon Engine No. 2, utilized the knowledge which had been acquired through the experiments made on Engine No. 1. It expended, during 1934, in experimental work on Engine No. 2 $62,856.34 (erroneously set up on its books and claimed in its return as $64,035.69), charged the said amount to expense, deducted it in its return, and now claims that it should be allowed as a deduction from gross income. The Commissioner disallowed the entire amount. Engine No. 2 proved to be a failure, was found to be impractical, and was abandoned during the year 1934.

The need for a gas compressor engine was still present in 1935 and sometime during that year petitioner began experimenting on Engine No. 3. This also proved worthless and in 1937 petitioner

abandoned it and gave up entirely the thought of developing a successful gas compressor engine to accomplish the desired purpose.

Petitioner was more or less constantly engaged in experimental work, trying to improve the articles which it was producing and to develop new articles for sale at a profit. It kept separate records of its experimental expenditures and the records pertaining to the gas compressor engines were kept separate from its other experimental expenditures. In each year after 1932 petitioner charged to expense of doing business all expenditures made by it in carrying on experiments during the year, including the expenditures made on the various compressor engines.

Petitioner contends that the entire amount ($96,509.10) expended by it in connection with Engine No. 1 is deductible in 1933 when this particular engine was abandoned. The same contention is made with reference to the expenditures made upon Engine No. 2 during the year 1934. In the alternative petitioner contends that in any event the sum of $32,070.79 expended by it in 1933 upon Engine No. 1 is deductible in that year.

Respondent's contention is thus stated upon brief:

Where experimentation is carried on, the entire plan, idea or project must be taken into consideration as well as the ultimate purposes to be reached. If those purposes are reached a capital asset results. If the experimentation results in a failure and the idea, scheme or project is definitely abandoned, the loss, if any, then becomes definitely sustained. Up to that point it is not known whether a successful machine would result. If the petitioner had not so thought, it would not have persisted in its experimentations through 1935, 1936 and into 1937. The failure of Engine No. 1, or Engine No. 2 does not determine the result of the project. The very nature of experimentation requires a determined persistency to attempt to reach the goal sought.

The parties appear to agree that if experimentation results in the development of a machine or contrivance which is reasonably practical and workable a capital asset is thereby acquired and the expenditures so made should be capitalized. *John F. Canning*, 29 B. T. A. 99; *Claude Neon Lights*, *Inc.*, 35 B. T. A. 424, 442. This was petitioner's view of the law during 1931 and 1932 and we declined to permit it to deduct the 1932 expenditures as ordinary and necessary expenses of carrying on its trade or business, holding that they had been properly capitalized. Neither party sought to overturn our decision and, as we understand the present contentions, neither now seeks to avoid its effect. The issue is the narow one whether petitioner may deduct as a loss in 1933 the capital expenditures which it had made in a futile effort to perfect Engine No. 1, and deduct as a loss in 1934 the capital expenditures which it had made in a futile effort to perfect Engine No. 2, or whether it must

as contended by respondent, wait until the whole "idea, scheme or project is definitely abandoned."

In *Homer L. Strong*, 14 B. T. A. 902, it was held that expenditures made in an unsuccessful attempt to perfect a threshing machine, which did not "result in the acquisition, development or improvement of a capital asset having a useful life beyond the taxable year in which the outlay was made", were deductible in the year expended. The rationale of that case would probably require that we uphold petitioner's alternative contention and allow as a deduction at least the amount expended during the year 1933 in a futile effort to perfect Engine No. 1. But we do not believe we should resolve the present controversy by merely allowing the amount expended during that year. The evidence shows that at the end of 1933 the petitioner had no asset of any value, though it had expended $96,509.10 in an effort to develop Engine No. 1. The whole plan of construction of an engine which it was hoped would accomplish the desired result was abandoned, the design was changed, the patterns and blueprints were discarded, and, in the language of petitioner's president, they "had nothing whatever to show for [their] * * * efforts at the end of 1933." They had merely "learned a great many ways of not doing it and that was about all." The consulting engineer testified that Engine No. 1 had no salable value at the end of 1933 and "was not a practical engineering proposition." He had made such a report to petitioner's officers and, under the circumstances, we think it was justified in charging off, in 1933, all of the expenditures theretofore made.

Nor is the situation materially different as to Engine No. 2 and the expenditures made during 1934. It also was found to be impracticable and unworkable and the amount expended upon it ($62,856.34) was charged off during that year.

Section 23 (f) of the Revenue Acts of 1932 and 1934 authorizes the deduction from gross income of "losses sustained during the taxable year and not compensated for by insurance or otherwise." Petitioner sustained a loss of $96,509.10 in 1933 and a loss of $62,856.34 in 1934. They are proper deductions from gross income for those years. Cf. *Lucas* v. *American Code Co.*, 280 U. S. 445; *H. B. Perine*, 22 B. T. A. 201.

*Judgment will be entered under Rule 50.*