Ralph V. Payne v. Commissioner.
Payne v. Commissioner
Docket No. 20720.
United States Tax Court
1950 Tax Ct. Memo LEXIS 72; 9 T.C.M. (CCH) 887; T.C.M. (RIA) 50241; October 17, 1950
*72 Ralph V. Payne, pro se. Sanford M. Stoddard, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies of $90 and $86 in petitioner's income taxes for 1946 and 1947, respectively. The question involved is whether petitioner is justified in claiming deductions as "business expenses" or "loss" in connection with his "machinery development business." [The Facts] Petitioner is an individual residing in Washington, D.C. He filed his returns for the calendar years 1946 and 1947 with the collector of internal revenue at Baltimore, Maryland. Petitioner is regularly employed as a carpenter or mechanic on a full-time basis by the United States Government, Bureau of Engraving and Printing. Having had a great deal of background in construction work and experience in the handling of material, petitioner utilized his spare time in attempting to develop certain types of machinery. Petitioner had no office but he rented a lock box at 410 Bond Building, Washington, D.C., which he used as his business address. He designed a hoisting tower and in 1936 obtained United States letters patent 2066221 on the device. In 1946 *73 he applied for letters patent on an improvement to the tower. The tower is a temporary elevator for moving materials on a construction job, and his patent and improvement thereon covered a method for the speedy erection of such an elevator. Prior to the war, he constructed an engine or model for the hoisting tower. Soon thereafter, he entered the Armed Services and did no further work on the hoisting tower. During the period in which he was in the Army, he decided to work on a device that would automatically handle material. His general idea was to invent a device that would automatically load material at a warehouse, and, after transporting it to the construction job, automatically unload the material. After returning to Washington from the Army in 1945, he proceeded to work on a design for such device. In the latter part of 1945 his first drawing of a device was made and a description prepared for petitioner by his patent attorneys. The device was described as a trailer vehicle, adapted for moving heavy machinery, such as engines, skids, pallet boards, and the like. He wrote various letters about this design to parties around the country who, he thought, would be interested. Early *74 in 1946 he took the design to the Mack Trust Co. headquarters in New York and to their plant in Allentown, Pennsylvania. After a conference with the company's chief engineers petitioner concluded that his design would not work. He then started to work on another design, but based on the same general idea of developing a device that would automatically handle material. In November 1946 he had a firm of engineers, Walter Scholl Co., prepare preliminary drawings of a "lift truck." This design was connected with his next design, the drawing of which was prepared by the same engineering company in January 1947. The important change made in this design from the original was the elimination of the front wheels. He took this design to the National Material Handling Exposition at Cleveland, Ohio, in January of 1947 for the purpose of making contacts. He conferred with certain persons at the Exposition, and as a result became discouraged with respect to his design but was encouraged on the general idea. Upon returning to Washington, he worked out another design and prepared a drawing of it in April. He wrote several letters to potential customers, and also contacted various manufacturers. This *75 device was termed a "skid carrier," and was thought by petitioner to be free from some of the basic weakness of the previous design. In 1945 petitioner rented a vacant piece of property in Washington for the purpose of having it available for the construction of the automatic material handling device when he was ready to start work on the actual machine. The hositing tower engine was kept on the property until 1948. Sometime in 1948 he built or had built a machine or model for automatically handling material. During 1948 he sold both machines for junk and closed down the yard. In his return for 1946 petitioner claimed the following deductions: Rent of yard
$120.00
Post office box rent
36.00
Public stenographer service
26.50
Photostats
24.00
Stationery
16.50
Postage
5.00
Newspaper ads
5.00
Paper drawings by Scholl Co.
217.00
Advertising and consulting engineers
57.00
Magazine subscriptions
13.00
Total
$520.00 In this return, he stated that the nature of his private business was "machinery development"; the business name was "Powerbilt"; and "this business entered into for long-range profit." In his 1947 return, he claimed deductions as follows: *76 Rent
$156.00
Public stenographer service
59.00
Postage
25.00
Photostats
43.90
Stationery and supplies
50.08
Advertising and consulting engineers
162.37
Total
$496.35 In that return, he showed the nature of his private business was "machinery development," and the name of the business "Powerbilt." On July 12, 1947, petitioner wrote the Collector of Internal Revenue at Baltimore, Maryland, a letter, with respect to the status of his income tax refund for the year 1946, in which he stated, "In my report only actual loss expenditures were claimed. No claim for patents or actual machine construction was claimed." He further propounded the following question: "Can current losses in connection with research and development of a new machine be deducted from current income, or must they be carried over until such time, if, as, and when the machine begins to show a profit?" There was no reply to this letter. On January 26, 1948, he wrote another letter to the Collector with respect to his return for 1946. In this letter, he made the following statement: "The losses shown are in connection with research and development of a private business venture. Sooner or *77 later this enterprise will either show a profit or will be abandoned." On June 28, 1948, he wrote to the Collector with respect to the disallowance of the deduction claimed by petitioner in his returns for 1946 and 1947. He stated: "Your disallowance of $496.35, business expense, in your letter of June 4, in which you also disallow $520.00 for 1946, seems to be based on the supposition that no patent has yet been issued. "The enclosed affidavit shows that a patent was first issued on December 29, 1936. All my expense since then has been in the development of this patent. The original patent was abandoned during service in the Army and, therefore, has not been depreciated. After the war, another patent, overlapping the first, was started. No deductions have or will be claimed for actual money spent on the patent, but only for development of the actual machine." If successful in evolving a practical device for the automatic handling of material, petitioner intended to either sell his device or apply for a patent thereon. Opinion KERN, Judge: While petitioner has contended that his deductions were ordinary and necessary expense in connection with his "machinery development business, *78 " he is now basing his claim for deduction on "loss" from the expenditures made on his several designs of the device for automatically handling material, which he contends were abandoned as he replaced them with new drawings. He is also confining his expenditures to the device for the automatic handling of material, and now claims that none of them related to the patent on the hoisting tower device, or to any improvement thereon. The question presented resolves itself to whether one can draw plans, abandon them, draw new plans based on the same general idea without developing the actual device, and be allowed a deduction of the amount expended on the respective plans as a loss. Ordinarily, such expenditures are not ordinary and necessary business expenses, but are in the nature of capital expenditures. The Beaumont Co., 3 B.T.A. 822; Perine, et al., 22 B.T.A. 201; Acme Products Co., Inc., 24 B.T.A. 194. Had petitioner constructed a machine from any of his designs, found it to be a failure and abandoned it, there is no question but what he would be entitled to a deduction for the capital expenditures in the year of abandonment. Dresser Mfg. Co., 40 B.T.A. 341.
*79 Petitioner deducted in his returns certain amounts which he called "Business Expenses-Loss." He was evidently confused as to the type of deduction to which he was entitled - whether his expenditures were in connection with carrying on his "machinery development business," or whether they related to the invention or inventions he was working on. From his statements in his return and in his letters to the collector he was of the belief that he had entered into a business for long-range profit; that the enterprise, sooner or later, would either show a profit or would be abandoned; and that the expenditures made in connection with research and development of a new machine should probably be accounted for tax-wise only when the machine began to show a profit, or was definitely ascertained to be valueless. He now contends that he was abandoned separate and distinct designs of different devices and has suffered a loss, or losses, in the amounts expended on such designs. We are of the opinion that the drawings or designs he made were steps toward the development of one device, and that there was merely a change in details in the designs of petitioner's particular device. Since it appears *80 that he went so far as to construct the actual device in 1948, (from what plans, it is not clear), it would seem that he was working on the device throughout 1947. Without passing on whether there was abandonment of the device for automatic handling of material during 1948, we believe there was no abandonment before then, so as to permit the deductions claimed in 1946 and 1947. Petitioner's plans were so related to a specific device with such a continuity of improving the plans and without reaching a definite stopping point on the device either in 1946 or 1947 that we are unable to see an abandonment of such device by petitioner during those tax years. Cf. Dresser Mfg. Co., supra. We conclude that the disallowance of the deductions should be sustained. Decision will be entered for the respondent.