J. R. Clem v. Commissioner. Susie A. Clem v. Commissioner.
Clem v. Commissioner
Docket Nos. 24863, 24864.
United States Tax Court
1951 Tax Ct. Memo LEXIS 2; 10 T.C.M. (CCH) 1248; T.C.M. (RIA) 51345; December 29, 1951
*2 S. L. Mayo, Esq., for the petitioners. John P. Higgins, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in income tax for the year 1944 in the amount of $2,416.65 in Docket No. 24863, and $2,416.64 in Docket No. 24864. By amended answer respondent requested increased deficiencies in the amount of $816.04 in Docket No. 24863, and $816.05 in Docket No. 24864, making a total deficiency in the amount of $3,232.69 for each petitioner. The issues presented for our determination are: (1) What was the fair market value on March 1, 1913, of shares of stock held by petitioners in the Clem Lumber Company? (2) Are petitioners entitled to a deduction in 1944 of $2,687.22 either as a business or nonbusiness expense, or as a loss on the abandonment of an invention? In an amended petition it is alleged that in 1940 petitioners owned 948 3/4 shares of Clem Lumber Company stock which had a basis of $111.40 per share; that in a settlement of income taxes due upon the sale or surrender of 513 3/4 shares of stock in 1940, respondent allowed a basis of $70 per share, or the aggregate amount of $35,962.50, *3 leaving as a basis for the 435 shares here in issue the sum of $113,208.25 rather than $48,459 as alleged in the original petition. Respondent, in an amended answer, alleges that he erred in favor of the petitioners by understating their tax liability for the year ended December 31, 1944, in that the basis for the 435 shares of stock was $66,974.35 rather than $73,930, as determined by respondent in the notice of deficiency. Petitioners concede the propriety of disallowance of a $10 Federal use tax on their personal automobile, and that their medical expense deduction, if any, is conditioned upon the final determination. The proceedings were consolidated for hearing and were submitted on a stipulation of facts, oral and documentary evidence. Findings of Fact Petitioners, husband and wife, during the taxable year 1944, were residents of Dallas, Texas, and filed separate income tax returns for that year with the collector of internal revenue for the second district of Texas, reporting income and deductions on the community property basis. The case of petitioner Susie A. Clem is here solely because of her community property status with her husband and, therefore, for the sake *4 of convenience, petitioner J. R. Clem will hereinafter sometimes be referred to as petitioner. Petitioner entered the lumber business in 1894 as a member of a partnership which started in a small northeast Texas city, Pecan Gap, and expanded by installing branch yards in other cities of northeast Texas and in Oklahoma in what was the old Indian Territory. In 1907 the Clem Lumber Company, a Texas corporation with principal offices in Dallas, was organized to acquire the Oklahoma yards and the partnership yards in Texas. Petitioner received stock in the new corporation for his interest in the partnership, making additional capital contributions by cash. The Clem Lumber Company (hereinafter sometimes referred to as the Company), weathered the 1907 depression, making profits during and after that period. It grew steadily from 1910 through 1913, at which time petitioner owned about one-third of the stock of the Company, being one of 30 to 40 stockholders. On December 31, 1944, the Company liquidated and dissolved. At that time petitioner owned 1,522 shares of stock in the Company, for which he received the sum of $94,102.50 in the liquidation. Of the 1,522 shares, all of which had *5 been held by petitioner for more than six months at the time of liquidation, 1,087 shares had been acquired at a cost basis of $40 per share, or an aggregate cost basis of $43,480, as to which there is no controversy. The remaining 435 of the 1,522 shares were owned by petitioner on March 1, 1913. It is the basis of these shares of stock which is here in controversy. The Clem Lumber Company was a closely held corporation. No sales of stock in the Company were made on or near March 1, 1913. In his deficiency notice respondent allows a cost basis to petitioners of the 1,522 shares of no more than $73,930 arrived at as follows: 1,087 shares at a cost of $40 per share
$43,480
435 shares with a basis of $70 per share
30,450
1,522 shares
Basis $73,930
In the years between 1913 and 1944, the Company several times increased and decreased its authorized capital stock. The parties agree that the 1944 basis of each of 435 shares of stock derived from shares held since on or before March 1, 1913, is the sum of $7.93 plus 38.46 per cent of the March 1, 1913, fair market value of each share then authorized. At March 1, 1913, the authorized capital stock of the Company *6 was $200,000 consisting of 2,000 shares, each of $100 par value. The surplus at that time amounted to $39,654.35. The Company paid cash dividends of $8,750 on January 7, 1913, and of $26,250 on January 28, 1913. It declared a stock dividend of $25,000 on February 15, 1913. One-sixth of its $87,891.98 profits of 1913 is $14,648.66. The book value of the Company on March 1, 1913, was $239,654.35 representing 2,000 shares of stock at $119.82 a share. The yearly income of the Company from 1908 to 1913 was as follows: Year
Income
1908
$10,781.99
1909
17,149.40
1910
30,958.62
1911
55,225.60
1912
63,668.37
1913
87,891.98 *
Clem Lumber Company carried no good will valuation on its books. It was engaged in the retail lumber business, did no manufacturing and sold standard products. It had no exclusive contracts. The origin and much of the success of the Company was attributable to the managerial ability and business acumen of petitioner J. R. Clem, and to his associates and branch managers whom he selected and supervised. On June 27, 1917, respondent *7 advised petitioner by letter that "In view of the earning capacity of the corporation of 150 per cent, as shown by the average profits per share earned during the preceding five years, this office is of the opinion that the fair value of the stock is at least $375.00 per share". The good will of the Clem Lumber Company had a substantial value. The March 1, 1913, value of the stock was $250 per share. Petitioners deducted in their 1944 returns the amount of $2,687.22 as business expenses. This amount was determined by the respondent to be non-deductible. These expenses were incurred in the perfection of a soft drink vending machine. Of this amount, $1,182.02 was attributable to travel and hotel expenses incurred on several trips to Chicago and Michigan for the purpose of improving this vending machine and preparing for its production. The invention was still in the process of development at the end of 1944. Petitioner did not abandon the machine on which these expenditures were made in 1944. Opinion In the deficiency notice respondent recognized the cost basis of petitioner's stock as being $73,930, which by supplemental pleading was reduced to $66,974.35. Petitioner, in his petition *8 and amendments to the petition, asserted $91,939 and $113,208.25, respectively, as being the cost basis of the Clem Lumber Company stock. The question is, what is the value of the stock - its book value as now contended affirmatively by respondent, or is there any appreciable good will that can be valued here? We can not agree with the respondent that the Company had no good will. A corporation which had been a going concern continuously for 6 years and in partnership form for 13 years previously, and which had weathered the 1907 depression and had returned pronts even in these lean years, must have acquired some measure of the intangible asset which we call "good will". Neither can we sustain respondent's contention that the success of the corporation was due solely to the skill, ability and other personal characteristics of petitioner, and hence under the holding in D. K. MacDonald, 3 T.C. 720, no value attributable to good will attached to the assets of the corporation. The facts here are distinguishable from those in that case. While the petitioner here did contribute much to the success of the Company, it can not be said he was solely responsible therefor; others *9 also played a prominent and necessary part therein. In March, 1913, petitioner owned only one-third of the stock, there being between 30 to 40 stockholders. It is evident that in 1917 respondent felt that the stock, based upon the earnings of the five prior years, had a value substantially in excess of that now claimed by petitioner. Without relying upon any one indicia of value, but after a careful analysis of all the factors bearing upon the value of the stock, including the expert's testimony, whose figure we are unable to adopt, we have found from all of the evidence and so hold that the March 1, 1913, value of the stock was $250 per share. In their returns for the year 1944 petitioners deducted the amount of $2,687.22 as a business expense for 1944 and alleged in their petitions that the disallowance by respondent was erroneous because the amount consisted of 81 items expended by petitioners in connection with the development of a vending machine and the vending machine became worthless; therefore, all expenditures should be regarded as ordinary and necessary business expenses or as losses. A taxpayer has no option to charge off capital expenditures as ordinary expenses, *10 American Seating Co., 4 B.T.A. 649; Gilliam Mfg. Co., 1 B.T.A. 967; Union Metal Mfg. Co., 1 B.T.A. 395, and the costs of developing patents, secret processes, and machines, such as laboratory work and experimentation, are capital expenditures. Goodell-Pratt Co., 3 B.T.A. 30; Beaumont Co., 3 B.T.A. 822; Claude Neon Lights, Inc., 35 B.T.A. 424. But where a taxpayer's efforts, in the development of a patent, process or machine, become fruitless, upon proof, he may be allowed a loss on the abandonment of the project in the year in which the abandonment occurred. Acme Products Co., Inc., 24 B.T.A. 194; Dresser Mfg. Co., 40 B.T.A. 341. Here, J. R. Clem testified he was still engaged in developing and perfecting his machine with the Lornigan Manufacturing Company in Michigan trying to "get it perfected and working in accordance with some ideas that they wanted to install, which they thought would make them better, and we worked there on it for about two weeks in December and in January, I believe it was, another two weeks". Not having abandoned the machine in the taxable year, petitioners *11 are not entitled to deduct the loss in 1944. Decisions will be entered under Rule 50. Footnotes
*. This includes $28,500 representing the gain from the sale of a lumber yard in Dallas, Texas, in 1913.↩